PREFERRED CAPITAL, INC., APPELLEE, *v.* POWER ENGINEERING GROUP, INC; PAC HEATING, INC., ET AL., APPELLANTS.

[Cite as *Preferred Capital, Inc. v. Power Engineering Group, Inc.*, 112 Ohio St.3d 429, 2007-Ohio-257.]

(No. 2005–2134—Submitted September 20, 2006—Decided February 7, 2007.)

———

MOYER, C.J.

{¶ 1} In this appeal, we are asked to determine whether a forum-selection clause that does not name a specific jurisdiction is valid and enforceable.

{¶ 2} Appellants are 12 out-of-state commercial entities that entered into lease agreements for telecommunications equipment with NorVergence, Inc., a New Jersey corporation. The lease agreements signed by appellants were virtually identical. The leases required appellants to make payments for 60 months and included a forum-selection clause stating: "This agreement shall be governed by * * * the laws of the State in which Rentor's principal offices are located or, if this Lease is assigned by Rentor, the State in which the assignees' principal offices are located * * * and all legal actions relating to this Lease shall be venued exclusively in a state or federal court located within that State * * *." At the time the leases were entered into, NorVergence's principal office was located in New Jersey.

{¶ 3} On September 30, 2003, before appellants signed the leases, NorVergence executed a Master Program Agreement with appellee, Preferred Capital, Inc. This agreement allowed NorVergence "from time to time" to assign its interest in these lease agreements to Preferred Capital. Preferred Capital's principal offices are in Ohio.

{¶ 4} NorVergence assigned its interest in the appellants' lease payments to Preferred Capital—in most cases the day after the leases were executed. Averring that NorVergence had failed to provide the savings promised, the appellants stopped making their lease payments. NorVergence subsequently filed for bankruptcy protection and was later found to have violated the Federal Trade Commission Act. *Fed. Trade Comm. v. NorVergence, Inc.* (July 22, 2005), N.J. No. 04–5414, 2005 WL 3754864.

{¶ 5} Preferred Capital sued each of the appellants separately in the Summit County Court of Common Pleas. The trial court sustained appellants' individually filed Civ.R. 12(B)(2) motions to dismiss for lack of personal jurisdiction. On appeal, the court of appeals consolidated the cases and reversed the judgments, holding that the forum-selection clauses were valid and enforceable; we accepted appellants' discretionary appeal.

{¶ 6} We begin our analysis by reiterating our previous holding that "the requirement that a court have personal jurisdiction over a party is a waivable right and there are a variety of legal arrangements whereby litigants may consent to the personal jurisdiction of a particular court system. Moreover, in the light of present-day commercial realities, it has been stated that a forum selection clause in a commercial contract should control, absent a strong showing that it should be set aside." *Kennecorp Mtge. Brokers, Inc. v. Country Club Convalescent Hosp., Inc.* (1993), 66 Ohio St.3d 173, 175, 610 N.E.2d 987, citing *The Bremen v. Zapata Off-Shore Co.* (1972), 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513.

{¶ 7} In *Kennecorp*, we adopted a three-pronged test, similar to the test in *Bremen*, to determine the validity of a forum-selection clause: (1) Are both parties to the contract commercial entities? (2) Is there evidence of fraud or overreaching? (3) Would enforcement of the clause be unreasonable and unjust? *Kennecorp*, 66 Ohio St.3d 173, 610 N.E.2d 987, syllabus. In *Kennecorp*, a specific forum, Ohio, was specified in the clause. Here, the facts are slightly different. Rather than specifying a named forum, such as Ohio or New Jersey, the clause allows for the forum to change depending on the state in which the headquarters of the entity that holds the interest in the lease payments are located. This type of forum-selection clause has been called a "floating forum clause." While this distinction is important in the application of the test, we conclude that the rule set forth in *Kennecorp* still applies. We next apply the test to the facts of this case.

### Commercial Nature of the Contract

{¶ 8} "Commercial forum-selection clauses between for-profit business entities are prima facie valid. * * * By contrast, in Ohio, forum-selection clauses are less readily enforceable against consumers." *Information Leasing Corp. v. Jaskot,* 151 Ohio App.3d 546, 2003-Ohio-566, 784 N.E.2d 1192, ¶ 13. Appellants argue

that they are "mom and pop" or small businesses and should not be considered sophisticated commercial entities. We reject that argument. First, there is nothing in the record to suggest that all appellants are indeed small businesses; moreover, appellants' suggestion that they are small businesses or sole proprietorships is not material. The contracts are commercial in nature between two for-profit entities. "Unlike a consumer who enters into a contract with a commercial entity, [a sole proprietor] is presumed to have some experience in contractual and business matters." Id. at ¶ 14. As we articulated in *Kennecorp*, forum-selection clauses should be distinguished between commercial and noncommercial parties. If both parties are for-profit, commercial entities, the relative size or sophistication of the parties is not a material factor.

## Fraud or Overreaching

{¶ 9} There is no evidence of fraud or overreaching in this case. While appellants do allege that NorVergence intended to defraud them, there is no evidence that appellants agreed to the forum-selection clause as a result of fraud. The clause was clearly and legibly printed on the second page of a two-page contract. No effort was made to conceal or hide the clause. In fact, printed in large type and in all capitals directly above the signature line of the guaranty on the front page is the sentence "You agree to jurisdiction and venue as stated in the paragraph titled Applicable Law of the rental [agreement]." Additionally, there is a valid business reason for including a floating forum clause in a contract. Appellee and its amici point out that a floating forum clause makes it easier for the lessor to sell his interest in the lease payments to a finance company. We therefore conclude that there is an absence of fraud and overreaching by NorVergence in relation to the forum-selection clause.

## Unreasonable or Unjust

{¶ 10} The final question to be answered under *Kennecorp* is whether enforcing the clause would be unreasonable and unjust. We begin our analysis by reiterating the long-held principle that parties to contracts are presumed to have read and understood them and that a signatory is bound by a contract that he or she willingly signed. *Haller v. Borror Corp.* (1990), 50 Ohio St.3d 10, 14, 552 N.E.2d 207; *DeCamp v. Hamma* (1876), 29 Ohio St. 467, 471–472.

{¶ 11} Appellants aver that litigating in Ohio would be burdensome because they are out-of-state entities. However, none of the appellants have offices in New Jersey, which is where the contract would have been litigated had NorVergence not assigned its interest. We are not persuaded that litigating a claim in Ohio would be any more burdensome for appellants than litigating a claim in New Jersey or that requiring the parties to litigate in Ohio would deprive them of

their day in court. Presumably, for some appellants, litigating a dispute in Ohio would be less onerous than litigating in New Jersey.[1]

{¶ 12} Although it does not appear in this case that enforcing the floating forum clause would deprive any appellant of its day in court, we hold that the clause is unreasonable because even a careful reading of the clause by a signatory would not answer the question of where he may be forced to defend or assert his contractual rights. At the time the contract was entered into, the appropriate forum would have been New Jersey; the very next day, in most cases, the lease was assigned to Preferred Capital and the appropriate forum became Ohio. Nothing prevented Preferred Capital from assigning its interest and changing the forum yet again. It is one thing for a contract to include a waiver of personal jurisdiction and an agreement to litigate in a foreign jurisdiction. It is quite another to contract to litigate the same contract in any number of different jurisdictions, located virtually anywhere. Nothing in the record indicates that appellants were fully apprised of the potential for a truly floating forum. The record indicates that NorVergence knew that it intended to assign these leases and that no matter how carefully appellants read the contract, they could never have anticipated the appropriate forum for litigating issues relating to their leases.

{¶ 13} Preferred Capital and NorVergence had superior information. Before the leases were signed, NorVergence had entered into the Master Program Agreement with Preferred Capital. NorVergence knew that it would likely assign its interest in appellants' leases to Preferred Capital or some other entity, but withheld that information from appellants.

{¶ 14} Presumably, Preferred Capital reviewed the leases before it accepted assignment. Preferred Capital was in a better position than appellants to evaluate the risk and costs of litigating in a foreign jurisdiction. Based upon the strong public policy of not haling individuals into foreign jurisdictions without their knowing waiver, and the superior knowledge and position of NorVergence and Preferred Capital in comparison to appellants, we hold this forum-selection clause unreasonable, and it would be unjust to enforce it.

{¶ 15} In a contract between two commercial entities, a forum-selection clause with no reference to a specific jurisdiction or jurisdictions is valid absent a finding of fraud or overreaching or a finding that enforcement of the clause would be unreasonable and unjust. A forum-selection clause may be held to be unreasonable if it would be against public policy to enforce it.

{¶ 16} We hold that when one party to a contract containing a floating forum-selection clause possesses undisclosed information of its intent to assign its

---

1. For example, appellant Home Furnishings of Clarkston is a Michigan corporation.

interest in the contract almost immediately to a company in a foreign jurisdiction, the forum-selection clause is unreasonable and against public policy absent a clear showing that the second party knowingly waived personal jurisdiction and assented to litigate in any forum. The judgment of the court of appeals is reversed.

Judgment reversed.

BOGGINS, O'CONNOR and O'DONNELL, JJ., concur.

PFEIFER, J., concurs in judgment only.

LUNDBERG STRATTON and LANZINGER, JJ., dissent.

JOHN F. BOGGINS, J., of the Fifth Appellate District, was assigned to sit for RESNICK, J., whose term ended on January 1, 2007.

CUPP, J., whose term began on January 2, 2007, did not participate in the consideration or decision of this case.

---

**LUNDBERG STRATTON, J., dissenting.**

{¶ 17} Because the majority fails to cite any sound public policy disfavoring the floating forum-selection clause at issue in this case, I respectfully dissent. The majority concluded that there was no fraud or overreaching by NorVergence. The majority held that there was no evidence that enforcing the floating forum-selection clause would deprive any appellant of its day in court. Yet the majority goes on to hold that the forum-selection clause is unreasonable and against public policy simply because at the time they entered the contract, appellants did not know exactly where they might have to litigate their contract. Nonetheless, that is exactly the agreement the parties made. I see no sound public-policy reason to void the forum-selection clause agreed to by these commercial entities, when there was no fraud or overreaching and the parties were on notice that the contract contained a floating forum-selection clause.

{¶ 18} The contract provision in contention in this case provides: "This agreement shall be governed by * * * the laws of the State in which Rentor's principal offices are located or, if this Lease is assigned by Rentor, the State in which the assignees' principal offices are located * * * and all legal action relating to this Lease shall be venued exclusively in a state or federal court located within that State * * *." The majority notes that this language was clear and was legibly printed on the second page of the two-page contract. There was no effort to conceal the clause. In fact, the majority notes that printed in large type and in all capital letters directly above the signature line of the guaranty on the front page of each contract is the sentence "You agree to jurisdiction and

venue as stated in the paragraph titled Applicable Law of the rental [agreement]."

{¶ 19} In *Kennecorp Mtge. Brokers, Inc. v. Country Club Convalescent Hosp., Inc.* (1993), 66 Ohio St.3d 173, 610 N.E.2d 987, syllabus, this court held, "Absent evidence of fraud or overreaching, a forum selection clause contained in a commercial contract between business entities is valid and enforceable, unless it can be clearly shown that enforcement of the clause would be unreasonable and unjust."

{¶ 20} The majority concedes that appellants were aware of the possibility that their contract could be assigned and that, due to the floating forum-selection clause, an assignment could change the forum for litigation. Yet the majority concludes that NorVergence withheld from appellants that it likely would assign its interests in appellants' leases to Preferred Capital or some other entity. There is absolutely no evidence of this, and even if there were, it is wholly irrelevant whether NorVergence intended to assign its interest in appellants' leases to another entity, because they were explicitly permitted to do so in the contract.

{¶ 21} When the leases were signed, NorVergence's principal office was in New Jersey. Later, NorVergence assigned its interest in these lease agreements to Preferred Capital, whose principal offices are in Ohio. Whether NorVergence assigned these documents one day later or ten weeks later should make no difference; the appellants clearly knew they were assignable.

{¶ 22} There is no evidence that when they signed the contract, appellants were concerned about where the contract could be litigated. They assented to the terms of the agreement, which specify that in the event of an assignment, the exclusive forum for litigation could be in any state in which a future assignee's principal offices are located. There is no evidence that appellants made any inquiry into or objection to the forum-selection clause. Appellants knew that under the terms of the contract, if NorVergence did not assign its interest, the proper place to litigate disputes would be New Jersey. As the majority concedes, it is no more unjust or unreasonable for appellants to defend themselves in Ohio than in New Jersey, as none has offices in either state.

{¶ 23} I would adopt the reasoning of the United States Court of Appeals for the Seventh Circuit in *IFC Credit Corp. v. Aliano Bros. Gen. Contrs., Inc.* (C.A.7, 2006), 437 F.3d 606, which, in considering an identical forum-selection clause, held that there should not have been a forum-selection dispute in that case because "the forum selection clause designates the state of suit unequivocally: it is the headquarters state of either NorVergence or, if the contact has been assigned, of the assignee." Id. at 612.

{¶ 24} Even though the contract unequivocally permitted the action taken by NorVergence, the majority concludes that it is against public policy to enforce this forum-selection clause. I disagree. The majority acknowledges that there is a valid business reason for including a floating forum-selection provision. Such a clause is a reflection of the realities of the modern-day leasing industry, where negotiable paper involving equipment leasing is bought and sold with regularity. This reality favors a clause that permits an assignee to bring suit in its home forum, thereby enhancing the marketability of the lease. "Parties to contracts are not benefited by rules that make assignment burdensome. If assignors have to compensate their assignees for having to litigate in an inconvenient forum, they will have to charge a higher price to their customers * * *." *Aliano*, 437 F.3d at 612–613.

{¶ 25} The majority also rejects the argument that the parties were unequal bargainers. Both parties to each contract were commercial entities negotiating a commercial contract. As in *Kennecorp*, we are dealing with sophisticated commercial parties, and "in the light of present-day commercial realities, it has been stated that a forum selection clause in a commercial contract should control, absent a strong showing that it should be set aside." *Kennecorp*, 66 Ohio St.3d at 175, 610 N.E.2d 987, citing *The Bremen v. Zapata Off–Shore Co.* (1972), 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513.

{¶ 26} The majority's sole basis for setting this floating forum-selection clause aside is that appellants could not have known *exactly* where they might have to litigate the contract. Such a holding invalidates all floating forum-selection clauses, for that is their very essence; the forum may change. That is part of the bargain agreed to by the parties.

{¶ 27} The majority states that public policy is against "haling individuals into foreign jurisdictions without their knowing waiver." This is true; however, there was clearly a knowing waiver by appellants in this case. The majority found that (1) the parties to this contact were commercial entities, (2) there was no fraud or overreaching, (3) the contract language was plain, and (4) there are legitimate business reasons for including a floating forum-selection clause in agreements of this sort. In my view, it is against public policy to hold a forum-selection clause invalid when the parties have knowingly agreed to it.

{¶ 28} The majority opinion seems to hold that a floating forum-selection clause is unreasonable if the final assignee is not declared up front. But whether commercial paper will be sold and to whom is often not known at the time of the initial transaction. The marketability of commercial paper is dependent on financial institutions being able to sell commercial paper freely. The majority's decision makes no sense in the modern market and will seriously undermine countless contracts with floating forum-selection clauses that have been entered

into in Ohio and will reduce the value of commercial paper with such clauses that have been purchased by Ohio institutions.

{¶ 29} Because I believe that the public-policy reason given by the majority is not supported by either the facts of this case or by the reality of modern commercial business practices and because I see no reason for setting this forum-selection clause aside, I respectfully dissent.

LANZINGER, J., concurs in the foregoing opinion.

———————

Roderick Linton, L.L.P., Tamara A. O'Brien, T. Anthony Mazzola, and Jason E. Hickman, for appellee.

Mark S. Shearer, for appellants PAC Heating, Inc., Hambergs Dr. BM Tru-Site Optical Co., and Donn C. Lamon, d.b.a. Lamon Associates.

Sutter, O'Connell & Farchione, Matthew C. O'Connell, and Victoria Barto, for appellants Houston Chapter Association General Contractors of America, Inc., and Tiny's Tire Center, Inc.

Julius P. Amourgis for appellant Pro Temps, Inc.

Gary Brown, for appellant Doug Johnson & Associates, Inc.

Oldham & Dowling and Hamilton DeSaussure Jr., for appellants Rick Hore and Location Real Estate.

Gregory Glick, L.L.C., and Gregory Glick, for appellants Plyley Enterprises, Inc., and Custom Data Solutions, Inc.

Roetzel & Andress, Bradley A. Wright, and Jerome G. Wyss, for appellant Home Furnishings of Clarkston, Inc.

Dykema Gossett, P.L.L.C., Edward A. Groobert, and Jill M. Wheaton, for amicus curiae Equipment Leasing Association of America, Inc., in support of appellee.

Coley & Associates Co., L.P.A., and William P. Coley II, for amicus curiae National City Commercial Capital Corporation, in support of appellee.

Tom Reilly, Attorney General of Massachusetts, and Scott D. Schafer and Geoffrey G. Why, Assistant Attorneys General, for amici curiae Attorneys General for the states of Arizona, California, Connecticut, Illinois, Iowa, Maryland, New York, Ohio, Pennsylvania, Rhode Island, and Massachusetts, in support of appellants.

Fiehrer & Lane, L.P.A., and Stephen C. Lane, for amici curiae A & B Express USA, Inc., et al., in support of appellants.