*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name:  07a0196p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

PREFERRED CAPITAL, INC.,

*Plaintiff-Appellant,*

*v.*

No. 06-3063

SARASOTA KENNEL CLUB, INC. and JACK COLLINS, JR.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 04-02063—John M. Manos, District Judge.

Argued:  April 19, 2007

Decided and Filed:  May 29, 2007

Before:  MERRITT and MARTIN, Circuit Judges; FORESTER, District Judge.[*]

_____

**COUNSEL**

_____

**ARGUED:**  Tamara A. O'Brien, RODERICK LINTON LLP, Akron, Ohio, for Appellant.  Holly Marie Wilson, REMINGER & REMINGER CO., L.P.A., Cleveland, Ohio, for Appellee.  **ON BRIEF:**  Tamara A. O'Brien, RODERICK LINTON LLP, Akron, Ohio, for Appellant.  Holly Marie Wilson, REMINGER & REMINGER CO., L.P.A., Cleveland, Ohio, for Appellee.

_____

**OPINION**

_____

MERRITT, Circuit Judge.  Preferred Capital brought this diversity action to enforce a rental agreement between Norvergence, Preferred Capital's assignor, and Sarasota Kennel Club.  The district court dismissed the claim because of a lack of personal jurisdiction over the defendants, and Preferred Capital appeals, arguing that the district court erred in refusing to enforce the forum selection clause in the Norvergence contract.  Since that decision, a clear distinction has emerged between the federal and state (Ohio) law concerning the enforcement of such clauses.  We are thus presented with the question of whether federal or state law controls the interpretation of a forum selection clause when the clause is raised as the sole basis for personal jurisdiction over the

---

[*] The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

defendant.  For the reasons discussed below, we hold that state law applies to this question and therefore affirm the District Court's decision to dismiss the case for lack of personal jurisdiction, albeit on different grounds.

## I.

In April 2004, the defendants, a Florida resident and his corporation, executed an Equipment Rental Agreement with Norvergence, Inc., a New Jersey corporation that is not a party to this case. The agreement called for Norvergence to supply the Sarasota Kennel Club with telecommunications equipment and services including land-line and cellular telephone service and high-speed internet access.  Norvergence never actually provided the services.

The rental agreement contained the following forum selection and choice of law provision:

> This agreement shall be governed by, construed and enforced in accordance with the laws of the State in which the Rentor's principal offices are located or, *if this Lease is assigned by the Rentor, the State in which the assignee's principal offices are located*, without regard to such states choice of law considerations and *all legal actions relating to this Lease shall be venued exclusively in a state or federal court located within that State, such court to be chosen at the Rentor or Rentor's assignee's sole option.*

J.A. 16, 266 (emphasis added).

Unbeknownst to the defendants, in September 2003, Norvergence had executed a Master Program Agreement with the plaintiff, Preferred Capital, Inc., a financial services company located in Brecksville, Ohio.  This agreement established terms under which Norvergence could, and presumably would, assign the rights to rental payments from future equipment rental agreements to Preferred Capital.

One day after Sarasota Kennel executed the Equipment Rental Agreement, it received notice that the agreement had been assigned, and that all future payments should be made to Preferred Capital.  This was the first time the defendants had heard of Preferred Capital.  After making the first few payments, Sarasota Kennel stopped paying because Norvergence had failed to provide the services promised in the rental agreement.  Sarasota Kennel's experience is not unique; hundreds of other parties entered into similar agreements with Norvergence, had their contracts assigned to finance companies, and never received the promised telecommunications services.

Norvergence is now in bankruptcy.  Its conduct has spawned a wave of litigation throughout the country, including suits against it and its finance company assignees.  The private actions include a class action lawsuit in New Jersey and numerous enforcement actions by state attorneys general, including one in Florida.  The Federal Trade Commission has already received a default judgment in an enforcement action against Norvergence. *Federal Trade Commission v. Norvergence, Inc.*, No. Civ.A.04-5414, 2005 WL 3754864 (D.N.J. July 22, 2005).  In addition, many of the finance companies have brought suit against the lessees, as is the case here.

Preferred Capital, as the assignee (claiming to be a good faith, holder in due course of the promissory agreement), filed this suit in the Court of Common Pleas for Cuyahoga County, Ohio, seeking the total sum of the rental payments due under the five-year lease.  The defendants removed the case to the Northern District of Ohio and filed a motion to dismiss the case for lack of personal jurisdiction.  Preferred Capital countered by arguing that the forum selection clause in the rental agreement provided the court with jurisdiction over the defendants. (Preferred Capital concedes that without the forum selection clause, the defendants do not have sufficient contacts with the State of

Ohio to be subject to personal jurisdiction there.)  The district court held the forum selection clause unenforceable under both Ohio and federal law (the two were identical at the time) because of fraud and overreaching by Norvergence, and granted the motion to dismiss.

Since the district court ruled on Sarasota Kennel Club's motion to dismiss, two cases have clarified how federal and state law apply to the facts of this case.  First, in July 2006, this court held a forum selection clause identical to the one at issue in this case enforceable under federal and Ohio law. *Preferred Capital, Inc. v. Associates in Urology*, 453 F.3d 718, 724 (6th Cir. 2006).  Second, in January 2007, the Ohio Supreme Court held the same forum selection clause invalid under Ohio law. *Preferred Capital, Inc. v. Power Eng'g Group, Inc.*, 860 N.E.2d 741 (Ohio 2007).  The Ohio court held that the information imbalance regarding the likely assignment of the rental agreement combined with the presence of a floating forum selection clause violated the state's public policy, rendering the clause unenforceable.

## II.

The question to be resolved, then, is whether federal or state law controls the interpretation of a forum selection clause in a diversity case where enforcement of the clause is necessary for the court to have personal jurisdiction over the defendant.  A recent Seventh Circuit case that arose from a similar Norvergence contract noted that this question has never been answered by the Supreme Court or any Circuit Court. *IFC Credit Corp. v. Aliano Bros. Gen. Contractors*, 437 F.3d 606, 609 (7th Cir. 2006).  The *IFC* court was able to interpret the forum selection clause without answering the question, because it held the clause enforceable under both Illinois and federal law.

When deciding to apply federal or state law to a forum selection clause, the context in which the clause is asserted can be determinative.  For example, when a party moves to transfer a case on the basis of a forum selection clause, the federal statute governing transfer motions controls the clause's interpretation. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988).  In *Stewart*, the Supreme Court rejected the circuit court's approach of deciding the question based on the procedural/substantive framework that is usually applied to resolve conflicts between federal and state law questions in diversity cases.  The Court found it unnecessary to ponder "the sticky question of which law, state or federal," should govern the interpretation of forum selection clauses in diversity cases and reoriented the inquiry to the "immediate issue before the District Court," the defendant's motion to transfer venue. *Id.* at 25-28.

The Court next concluded that the federal statute governing motions to transfer, 28 U.S.C. § 1404(a), was broad enough to resolve the forum selection clause issue and the statute represented a constitutional exercise of Congressional authority before remanding the case with instructions that the forum selection clause be considered as one of the factors in the motion to transfer test. *Id.* at 29-30.  In *IFC*, the Seventh Circuit suggested that this approach supports applying state law in the context of a motion to dismiss for lack of personal jurisdictions, since diversity courts look to state law in deciding such motions.[1]  437 F.3d at 609.

_____

[1]We note that the Seventh Circuit was somewhat equivocal in its support of this approach.  Specifically, the court recognized that a motion to dismiss for lack of personal jurisdiction serves very nearly the same function as a motion to transfer, since the losing plaintiff in a case like this will presumably refile the case in a court with jurisdiction over the defendant, just as if a transfer order had been issued.  Because of this functional similarity, the Seventh Circuit suggested that a case like this might be properly analyzed under *Stewart* by applying the balancing test prescribed by the transfer statute, 28 U.S.C. § 1404(a).  437 F.3d at 608-09.

To hold that *Stewart* required the application of federal law would, however, undermine the very heart of the Supreme Court's reasoning that the rule of the threshold motion should control.  Also, the Seventh Circuit's presumption that a losing plaintiff will respond to a dismissal by refiling in a proper forum is not an ironclad guarantee.  It is not difficult to imagine a situation where a plaintiff would decide not to pursue its claim in a far away forum, either because of the cost and inconvenience involved or because the plaintiff perceived the forum less hospitable to its claim.  These

Preferred Capital argues that we should follow the approach of several other circuit courts by applying the traditional substantive/procedural test for resolving conflicts between federal and state law in diversity cases and by then finding that federal law applies because interpreting a forum selection clause is procedural, rather than substantive, in nature.[2]  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877-78 (3d Cir. 1995); *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1991), *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988).  *But see Nutter v. New Rents, Inc.*, No. 90-2493, 1991 U.S. App. LEXIS 22952, at *14 (4th Cir. October 1, 1991) (holding that the interpretation of a forum selection clause is substantive and state law should apply).

In each of the three published cases, a party invoked a forum selection clause in a context other than a motion to transfer or motion to dismiss for lack of personal jurisdiction.  In each case, the court decided that since a motion to transfer was not involved, *Stewart* did not control the decision of which law to apply.  They then held that interpretation of such clauses was procedural in nature, because the federal procedural interest outweighed the state's interest in having its rule applied.  *E.g. Manetti-Farrow*, 858 F.2d at 513.

Of these approaches, the threshold-question approach employed in *Stewart* is the best fit for the question before us.  Like the Supreme Court in *Stewart*, we can answer the question of which law should apply to interpreting the forum selection clause by addressing the immediate issue of personal jurisdiction and applying the well-established choice of law mechanism that this analysis provides.  It is unnecessary for us to directly confront "the sticky question of which law, state or federal," governs in all diversity suits. *Stewart*, 487 U.S. at 25-26.

In diversity actions, federal courts apply state law to determine questions of personal jurisdiction.  *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005).  In our case, then, the recent holding of the Ohio Supreme Court controls our decision here.  *Power Eng'g Group, Inc.*, 860 N.E.2d at 746.  Because it violates the public policy of the state of Ohio, the Norvergence forum selection clause is not enforceable.

Even if we were to agree with Preferred Capital that the procedural/substantive balancing test were to apply here, our result would not change.  First, we note that resolving the conflict between federal and state law in a situation where there is no federal statute or rule on point requires us to make a "relatively unguided *Erie* choice."  *Hanna v. Plumer*, 380 U.S. 460, 471 (1965).  Second, the Supreme Court has instructed that when a federal procedural statute or Rule of Procedure is not on point, courts should strive for uniformity of outcomes between federal and state courts. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941).  Finally, when deciding what is procedural and what is substantive for diversity purposes, we apply a functional test based on the "twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws."  *Hanna*, 380 U.S. at 468.

Under these guidelines, we conclude that Ohio law should apply to the interpretation of this forum selection clause.  To apply federal law would undercut both aims of the *Erie* test – it would encourage forum shopping by providing differing outcomes in federal and state court.  *See Stewart*,

---

realities suggest that treating the motion to dismiss for lack of personal jurisdiction and the motion to transfer as functional equivalents is not a sound basis for applying the transfer statute to the facts of this case.

[2]During oral arguments, Preferred Capital also contended that the facts of this case were distinguishable from the facts of the Ohio Supreme Court's *Power Engineering* case, and thus the same result is not compelled here.  Our examination of the records of the two cases turns up no such distinctions.  Indeed, the forum selection clauses at issue in the two cases are identical and the broader contracts are identical except for the descriptions of the specific services to be provided and monthly payment amounts.

487 U.S. at 39-40 (Scalia, J., dissenting) (arguing that the *Erie* test should govern the interpretation of forum selection clauses and concluding that the test compels the application of state law).

Further, the state interest in limiting the adjudication of contract cases against out-of-state defendants pursuant to the Norvergence forum selection clause outweighs the federal court's interest in applying its own rules to interpreting the forum selection clause. *See Byrd v. Blue Ridge Elec. Coop.*, 356 U.S. 525, 537-538 (1958) (comparing the competing federal and state interests to determine whether the state or federal rule should apply in a diversity case). In *Power Engineering*, the Ohio Supreme Court held that "when one party to a contract containing a floating forum selection clause possesses undisclosed intent to assign its interest in the contract almost immediately to a company in a foreign jurisdiction, the forum selection clause is unreasonable and violates public policy" absent a clear showing that the countersigning party knowingly waived personal jurisdiction in any forum. 860 N.E. at 746. That the forum selection clause at issue here violates the public policy of the State of Ohio is not an interest that we consider lightly. The Ohio Supreme Court has found the clause against public policy because of the possibility of fraud. This is a strong "substantive" conclusion of Ohio law. On the other hand, the federal court's interest is in applying consistent rules to interpreting forum selection clauses. As the Supreme Court in *Stewart* explained, the interpretation of forum selection clauses in federal courts is not a uniform exercise requiring a *per se* rule; the context in which the clause is raised can determine how it is interpreted. Given this relative imbalance between the federal and state interests at issue here, we do not agree with Preferred Capital that the *Erie* test requires us to find the issue simply a procedural rather than a substantive matter.

For the foregoing reasons, we affirm the judgment of the District Court.