Baldwin, J.
{¶ 1} Defendant-appellant KDH Defense Systems, Inc. appeals from the October 17, 2016 Journal Entry of the Morrow County Court of Common Pleas. Plaintiff-appellee Specialty Executives, Inc. has filed a cross-appeal.
STATEMENT OF THE FACTS AND CASE
{¶ 2} Appellant KDH Defense Systems, Inc. ("KDH"), which is located in North Carolina, is a designer and manufacturer of body armor that is used by the military and law enforcement. Appellee Specialty Executives, Inc., which is located in Morrow County, Ohio, is an employment recruiter *117 that specializes in the defense industry.
{¶ 3} On or about December 15, 2011, appellant entered into a Placement Search Agreement with appellee. The Agreement provided that appellee would be compensated 25% of a hired candidate's first year contracted salary. The Agreement stated that it would "act as the legal and binding contract for all placement services between SE [appellee] and CLIENT [appellant]." The Agreement further stated that "CLIENT will be able to terminate this AGREEMENT with 10 days written notice remitted to SE [appellee] by CLIENT via certified mail," and that "SE will be able to terminate this Agreement with ten days written notice remitted to SE (sic) by CLIENT (sic) via certified mail." The Agreement also provided that it could be modified or amended by a writing signed by both parties. Moreover, the Agreement stated, in relevant part, as follows:
The AGREEMENT shall be construed under and in accordance with the laws of the State of Ohio. The venue of any litigation related hereto shall be in the applicable State or Federal courts in Morrow County, Ohio. In the event SE must pursue collection or legal efforts to obtain payment hereunder, SE shall be entitled to receive from CLIENT all of its cost and expenses related to the collection, both prior to and during litigation, including reasonable attorney fees and applicable finance charges. There is no provision provided in this contract for arbitration.
Appellee placed seven employees with appellant in accordance with such Agreement.
{¶ 4} On or about March 25, 2014, Travis Thomas, appellee's President, contacted David Herbener, appellant's President and CEO, via email to determine if he was interested in hiring Scott Wylie. In the e-mail, Thomas stated that if appellant was interested in hiring Wylie, who Thomas stated did not have a non-competition agreement with his current employer, appellee's fee would be 30% of his contracted first year salary. Thomas attached a copy of the Fee Agreement to the email.
{¶ 5} After appellant expressed an interest in hiring Wylie after interviewing him, Thomas sent an email to Herbener on April 18, 2014 stating, in relevant part, as follows:
{¶ 6} I would recommend the below listed schedule for the placement of Scott Wylie.
{¶ 7} 1) 6 month guarantee (if KDH meets scheduled payments and pays in full).
{¶ 8} 2) 30% of guaranteed salary 178K (SE's base fee for senior level placements).
{¶ 9} 3) 5 payments of $10,680.00. First payment due April 28th(Scott's Start Date). Each additional payment due on the 28th of each month.
{¶ 10} Thomas ended the email by stating that he could have the agreement drawn up and emailed to Herbener for his signature. Later on the same day, Herbener sent an email to Thomas providing that "I need you to get to 25% and we have a deal with all else the same as you listed below." In an email to Thomas from Herbener dated Monday, April 21, 2014, Herbener indicated that appellant would "go along with your 30% with the conditions that you noted below in your Friday email." The "Friday email" referred to was the email from Thomas dated April 18, 2014.
{¶ 11} On April 21, 2014 and May 22, 2014, appellee sent David Herbener copies of the Fee Agreement that contained Thomas' electronic signature. These versions were was more detailed than the *118 earlier version and indicated that appellant would be invoiced $53,400.00, which is 30% of Wylie's alleged salary of $178,000.00.
{¶ 12} It was discovered shortly thereafter that Wylie's previous employer alleged that he was bound by a non-competition agreement. Appellant, through Herbener, still expressed interest in hiring Wylie. Wylie subsequently filed a lawsuit in August of 2014 against his former employer to resolve the non-competition agreement. The lawsuit was resolved on October 6, 2014 and dismissed on October 30, 2014. Appellant hired Wylie as memorialized in an Employment Agreement dated October 6, 2014. His base salary was $160,000.00 a year plus guaranteed commissions of no less than $2,000.00 a month for the first six months. On or about October 15, 2016, appellee sent appellant an invoice in the amount of $44,500.00 for Wylie's placement. Appellee on or about the same date, allegedly sent appellant an invoice in the amount of $53,400.00. Appellant refused to pay either of the invoices.
{¶ 13} Appellant never returned to appellee a signed version of the 2014 Fee Agreement.
{¶ 14} On November 4, 2014, appellee filed a complaint for breach of contract and unjust enrichment against appellant based upon the 2011 Agreement, demanding compensation in the amount of $44,500.00, which represents 25% of $178,000.00, attorney's fees, and interest. Appellee, in its complaint, noted that the 2011 Agreement stated, in relevant part, as follows: "This AGREEMENT shall be construed under and in accordance with the laws of the State of Ohio. The venue of any litigation related hereto shall be in the applicable State or Federal courts in Morrow County, Ohio." On January 5, 2015, appellant filed an answer to the complaint. Appellant, in its answer, claimed, in part, that the 2011 Agreement did not apply to Wylie's placement and that the Morrow County Court of Common Pleas was not a proper venue.
{¶ 15} On February 18, 2015, appellee filed a Motion for Summary Judgment against appellant. Appellant, on March 3, 2015, filed a combined Memorandum in Opposition to such motion and Motion for Summary Judgment, arguing that the 2011 Agreement did not apply to the Wylie placement and that, therefore, the trial court lacked personal jurisdiction over appellant.
{¶ 16} Appellee, on April 27, 2015, filed a Motion to Amend Its Complaint. Appellee sought to amend its complaint based on appellant's position that the 2011 Agreement did not apply because there were new negotiations between appellant and appellee. Appellee, in its motion, stated that "to the extent that it does not apply, then the contract sent to KDH on no less than two occasions after negotiations would govern the transaction. That latter contract actually contains terms more favorable to Specialty than the 2011 contract." Appellee, in its motion, stated, in relevant part, as follows:
The 2014 contract would have been referenced in and attached to the original Complaint filed in this action, but for some confusion on the part of the undersigned attorney regarding the sequence of events. Specifically, there had been another proposed contract sent to KDH at the beginning of the 2014 negotiations. But the terms of that contract had clearly been rejected by KDH. Thus, it was never attached. Recently the undersigned counsel became aware of the most-recent proposed contract (attached), whose terms were never rejected by KDH.
{¶ 17} The proposed contract was the Fee Agreement.
*119 {¶ 18} Appellant filed a memorandum in opposition to the Motion to Amend.
{¶ 19} The trial court, pursuant to a Journal Entry filed on August 7, 2015, denied both Motions for Summary Judgment, finding that there were genuine issues of material fact that needed resolved by a trial to the trier of fact. The trial court, as memorialized in a Journal Entry filed on September 22, 2015, granted the Motion to Amend the Complaint.
{¶ 20} Appellant, on October 14, 2015, filed a Motion to Dismiss appellee's complaint pursuant to Civ.R. 12(B)(2) for lack of personal jurisdiction. Appellant, in its motion, noted, in part, that it maintained no office or business facility in Ohio, that none of its' employees or representative had ever traveled to Ohio for any purpose with respect to the Wylie transaction or any other transaction with appellee, and that its only communications with appellee in Ohio regarding the Wylie transaction were by email and phone. Appellee filed a memorandum in opposition to the motion on October 21, 2015, arguing that under the 2011 Agreement, appellant agreed as follows: "This AGREEMENT shall be construed under and in accordance with the laws of the State of Ohio. The venue of any litigation related hereto shall be in the applicable State or Federal courts in Morrow County, Ohio."
{¶ 21} An oral hearing on the Motion to Dismiss was held on November 12, 2015. After the hearing, the parties submitted proposed findings of fact and conclusions of law. The trial court, via a Journal Entry filed on January 26, 2016, overruled the Motion to Dismiss. The trial court found that it had personal jurisdiction over appellant because the 2011 Agreement specified that it would be construed under the laws of Ohio and that any litigation should be in Morrow County. The trial court noted that the Agreement was not terminated when the parties negotiated on the placement of Scott Wylie and concluded that the parties had negotiated in good faith based on the 2011 Agreement.
{¶ 22} Thereafter, a jury trial commenced on August 15, 2016. The jury, on August 17, 2016, returned with a verdict in favor of appellee and against appellant in the amount of $51,600.00. The jury found that the 2011 Agreement did not apply to Scott Wylie and that the parties had entered into a new contractual agreement based on the exchange of e-mails plus Exhibits 7 and F, which are e-mails. Appellant, on August 22, 2016, filed a Motion for Reconsideration of the trial court's January 22, 2016 Journal Entry denying its Motion to Dismiss for lack of personal jurisdiction, noting that the jury found that the 2011 Agreement, which contained the agreed venue provision, did not apply. Appellee filed a memorandum, in opposition to the same on August 25, 2016. On the same date, appellee also filed a Motion for Judgment Notwithstanding the Verdict pursuant to Civ.R. 50(B). Appellant filed a memorandum in opposition to the same on September 7, 2016. Appellant filed a Conditional Motion for Judgment Notwithstanding the Verdict on October 11, 2016.
{¶ 23} Pursuant to a Journal Entries filed on September 21, 2016, the trial court denied the Motion for Reconsideration and granted judgment in favor of appellee and against appellant in the amount of $51,600.00 plus interest. As memorialized in a Journal Entry filed on October 17, 2016, the trial court denied both parties' Motions for Judgment Notwithstanding the Verdict.
{¶ 24} Appellant now appeals, raising the following assignments of error on appeal:
{¶ 25} I. THE TRIAL COURT ERRED IN EXERCISING PERSONAL JURISDICTION
*120 OVER APPELLANT KDH DEFENSE SYSTEMS, INC.
{¶ 26} II. THE TRIAL COURT ERRED IN DENYING APPELLANT KDH DEFENSE SYSTEMS, INC. POST-TRIAL MOTION FOR RECONSIDERATION OF ITS JUDGMENT AND ENTRY OVERRULING KDH'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION.
{¶ 27} III. THE TRIAL COURT ERRED IN DENYING APPELLANT KDH DEFENSE SYSTEMS, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION.
{¶ 28} Appellee, has filed a cross-appeal, raising the following assignments of error:
{¶ 29} I. THE TRIAL COURT ERRED IN DENYING SPECIALTY'S MOTION FOR A DIRECTED VERDICT.
{¶ 30} II. THE JURY'S VERDICT WAS CONTRARY TO THE EVIDENCE AND LAW, UNFAIRLY DEPRIVING SPECIALTY OF ITS CONTRACTUAL RIGHT TO RECOVER INTEREST AND ATTORNEY FEES.
{¶ 31} III. THE TRIAL COURT ERRED IN DENYING SPECIALTY'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.
APPEAL ASSIGNMENTS I, III
{¶ 32} Appellant, in its first assignment of error, argues that the trial court erred in exercising personal jurisdiction over appellant. Appellant, in its third assignment of error, argues that the trial court erred in denying its Motion to Dismiss for lack of personal jurisdiction.
{¶ 33} As an initial matter, we note that appellee had argued that appellant waived any objection as to personal jurisdiction. A court may obtain personal jurisdiction by service of process, voluntary appearance or waiver. Maryhew v. Yova , 11 Ohio St.3d 154, 156, 464 N.E.2d 538 (1984). Any objection to the assumption of personal jurisdiction is waived by a party's failure to assert a challenge to such jurisdiction at its first appearance in the case. McBride v. Coble Express, Inc. , 92 Ohio App.3d 505, 510, 636 N.E.2d 356, 359 (3rd Dist. 1993). We note that appellant, in its answer and throughout this case, has raised the defense of lack of personal jurisdiction. We find, therefore, that appellant had not waived such issue.
{¶ 34} A court must have personal jurisdiction over a defendant in order to hear and determine an action. Maryhew, supra. A trial court's determination of whether personal jurisdiction over a party exists is a question of law, and appellate courts review questions of law under a de novo standard of review. Information Leasing Corp. v. Jaskot, 151 Ohio App.3d 546, 2003-Ohio-566, 784 N.E.2d 1192 (1st Dist.).
{¶ 35} Generally, a court must undertake a two-step process in determining whether a state court has personal jurisdiction over a non-resident defendant. Fraley v. Estate of Oeding, 138 Ohio St.3d 250, 2014-Ohio-452, 6 N.E.3d 9, ¶ 12. The court must first consider whether Ohio's long-arm statute, R.C. 2307.382, or the civil rules confer jurisdiction. Id. If they do, the court must then consider whether asserting jurisdiction over the non-resident defendant would deprive the defendant of the right to due process under the law, as guaranteed by the Fourteenth Amendment to the U.S. Constitution. Id. To satisfy due process, the defendant must maintain "certain minimum contacts with the state so *121 that the suit does not offend traditional notions of fair play and substantial justice." Clark v. Connor, 82 Ohio St.3d 309, 314, 695 N.E.2d 751 (1998).
{¶ 36} However, a person or entity may consent to personal jurisdiction, thereby waiving his her, or its due process rights. Kennecorp Mrge. Brokers, Inc., v. Country Club Convalescent, 66 Ohio St.3d 173, 175-176, 610 N.E.2d 987 (1993). One way litigants may consent to personal jurisdiction of a particular court system is through a valid forum selection clause. See id. ; Preferred Capital Inc. v. Power Eng. Group, Inc., 112 Ohio St.3d 429, 860 N.E.2d 741, 2007-Ohio-257, ¶ 6.
{¶ 37} The trial court, in the case sub judice, found that it had personal jurisdiction over appellant based on the forum selection clause contained in the 2011 Agreement entered into by the parties.
{¶ 38} After appellant filed a Motion to Dismiss for lack of personal jurisdiction pursuant to Civ.R. 12(D), a hearing was held. At the hearing, Travis Thomas, appellee's President, testified that since 2011, appellee has had employment placement business transactions with appellant. He testified that between entering into the 2011 Agreement through March of 2014, appellee had placed approximately 7 employees with appellant and was paid a fee by appellant for each of the placements. When questioned by the trial court, Thomas testified that appellee initially revealed Wylie's name to appellant because of the 2011 Agreement that was in place and due to its prior involvement with appellant.
{¶ 39} The trial court, in its January 26, 2016 Journal Entry, noted that the 2011 Agreement was not terminated when the parties were negotiating for Wylie's placement and that the parties negotiated the same in good faith based on the 2011 Agreement. Moreover, appellee's amended complaint included alternative claims-one under the 2011 Agreement and the other under the 2014 Agreement. We find, on such basis, that the trial court did not err in exercising personal jurisdiction over appellant.
{¶ 40} Appellant's first and third assignments of error are, therefore, overruled.
CROSS-APPEAL I, II, III
{¶ 41} Appellee, in its first assignment of error in its cross-appeal, argues that the trial court erred in denying its Motion for a Directed Verdict and, in its second assignment of error, that the jury's verdict was contrary to the evidence. In its third assignment of error, appellee argues that the trial court erred in denying its Motion for Judgment Notwithstanding the Verdict.
{¶ 42} A trial court's decision on a motion for directed verdict presents a question of law, which an appellate court reviews de novo. Groob v. KeyBank, 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E.2d 1170. Civil Rule 50 provides for a motion for directed verdict, which may be made at the opening statement of the opponent, at the close of opponent's evidence, or at the close of all the evidence. Upon receiving the motion, the trial court must construe the evidence most strongly in favor of the party against whom the motion is directed. Civil Rule 50(A)(4). If the trial court finds on any determinative issue reasonable minds could come but to one conclusion on the evidence submitted, then the court shall sustain the motion and direct the verdict as to that issue. A directed verdict is appropriate where a plaintiff fails to present evidence from which reasonable minds could find in plaintiff's favor. See Hargrove v. Tanner, 66 Ohio App.3d 693, 586 N.E.2d 141 (9th Dist. 1990).
*122 {¶ 43} The standard for granting a motion for judgment notwithstanding the verdict under Civil Rule 50(B) is the same used for granting a Civil Rule 50(A) directed verdict. Texler v. D.O. Summers Cleaners & Shirt Laundry Co., 81 Ohio St.3d 677, 679, 693 N.E.2d 271 (1998) ; Wagner v. Roche Laboratories, 77 Ohio St.3d 116, 121, 671 N.E.2d 252, 256 (1996). In other words, as long as substantial competent evidence supports the non-moving party, and reasonable minds could reach different conclusions about that evidence, the motion must be denied. See Strother v. Hutchinson, 67 Ohio St.2d 282, 284-85, 423 N.E.2d 467 (1981) ; Posin v. A.B.C. Motor Court Hotel, Inc., 45 Ohio St.2d 271, 275, 344 N.E.2d 334 (1976). In reviewing a motion for JNOV, courts do not consider the weight of the evidence or the witness credibility; rather, courts consider the much narrower legal question of whether sufficient evidence exists to support the verdict. Texler v. D.O. Summers Cleaners & Shirt Laundry Co., 81 Ohio St.3d 677, 679, 693 N.E.2d 271 (1998) ; Wagner v. Roche Laboratories, 77 Ohio St.3d 116, 121, 671 N.E.2d 252, 256 (1996).
{¶ 44} At the close of the evidence, appellee's counsel made a motion for directed verdict, arguing that "on all the issues that the fact that the 2011 contract was never terminated, and that the only issue that would be whether it was amended." Transcript at 421. The trial court, in denying such motion, found that there was an issue of fact as to whether or not the 2011 agreement applied to the Wylie placement. We find, upon our review of the record, that the trial court was correct and did not err in denying such motion.
{¶ 45} In the case sub judice, after the jury found that the parties entered into a new contractual agreement based on the exchange of e-mails, appellee filed a Motion for Judgment Notwithstanding the Verdict, arguing that the 2011 Agreement applied to the Wylie placement. The essential elements of a contract are an offer, acceptance, contractual capacity, consideration, a manifestation of mutual assent, and legality of object and of consideration. Kostelnik v. Helper, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16. "Mutual assent or 'a meeting of the minds' means that both parties have reached an agreement on the contract's essential terms." Nguyen v. Chen, 12th Dist. Butler No. CA2013-10-191, 2014-Ohio-5188, 2014 WL 6612424, ¶ 43 (Citation omitted). To prove the existence of a contract, written or oral, "a plaintiff must show that both parties consented to the terms of the contract, that there was a 'meeting of the minds' of both parties, and that the terms of the contract are definite and certain." Episcopal Retirement Homes, Inc. v. Ohio Dep't of Indus. Rel. , 61 Ohio St.3d 366, 369, 575 N.E.2d 134 (1991).
{¶ 46} In the case sub judice, in March of 2014, appellee sent appellant a copy of Scott Wylie's CV via e-mail along with a copy of its Fee Agreement. The agreement provided for a service fee of 30% and, among other terms, provided that Ohio's "laws and courts" would govern the parties' relationship. Subsequently, on April 18, 2014, Travis Thomas sent an e-mail to David Herbener stating as follows:
{¶ 47} I would recommend the below listed schedule for the placement of Scott Wylie.
{¶ 48} 1) 6 month guarantee (if KDH meets scheduled payments and pays in full).
{¶ 49} 2) 30% of guaranteed salary 178K (SE's base fee for senior level placements).
{¶ 50} 3) 5 payments of $10,680.00. First payment due April 28th(Scott's Start *123 Date). Each additional payments due on the 28th of each month.
{¶ 51} Thomas ended the email by stating that he could have the agreement drawn up and emailed to Herbener for his signature. In response, Herbener sent Thomas an email on April 18, 2014 indicating that "I need you to get to 25% and we have a deal with all else the same as you listed below." In another e-mail to Thomas dated April 21, 2014, Herbener stated that appellant "would go along with your 30% with the conditions that you noted below in your Friday email." The "Friday email" referred to was the email from Thomas dated April 18, 2014.
{¶ 52} Although the proposed 2014 agreement was never signed by appellant, we find that there was competent, substantial evidence that the parties entered into a binding contract via their e-mails. We find that there was sufficient evidence supporting the jury's verdict that there was an offer, acceptance and consideration and that the jury's verdict was not contrary to law. The terms of the parties' agreement were sufficiently definite to be enforced. While appellee argues that the 2011 agreement applies because it was never terminated in writing as required by its terms, we agree with the trial court that substantial, competent evidence supported the jury's verdict and that reasonable minds could reach different conclusions about the evidence and that the jury's verdict, therefore, should stand.
{¶ 53} Moreover, as noted by the trial court:
Waiver of any terms of a contract may be either by subsequent contracts, written or oral, or by the acts and conduct of the parties[1] . A waiver may be expressed or implied from conduct. There does not appear to be anything under Ohio law that would prevent a new contract from superseding the old contract for the implied or intended purpose of the new contract only. The jury in this case, as the trier of facts, determined that this was a new contract based upon the e-mails. Ohio law does not mandate that the former contract be extinguished, and Ohio law would allow for the provisions raised by the Plaintiff to be waived, specifically that all contracts for placement must be through the 2011 agreement.
{¶ 54} We agree with the trial court that appellee, through its conduct, waived its right to have the 2011 Agreement to apply to all placements and to require a written termination of the same. It would be illogical for appellee to require appellant to provide written termination of the 2011 Agreement when it was appellee, and not appellant, that sought apply the 2011 Agreement to Wylie. Moreover, there was testimony at trial that appellee never intended the 2011 agreement to apply to Wylie's placement, but that appellee intended to enter into an entire new contract with respect to such placement. Transcript at 167-169. We note that the Fee Agreement electronically signed by Thomas on behalf of appellee that was sent via e-mail is specifically tailored to Wylie, stating what its commission would be based on his alleged salary. There further was testimony that, during the negotiations, the 2011 Agreement was never mentioned.
{¶ 55} Based on the foregoing, we find that the trial court did not err in denying appellee's Motion for a Directed Verdict or Motion for JNOV. We further find that the jury's verdict was not contrary to the evidence.
{¶ 56} Based on the foregoing, appellee's first, second and third assignments of error are overruled.
*124 APPEAL ASSIGNMENT II
{¶ 57} Appellant, in his second assignment of error, argues that the trial court erred in denying its post-trial Motion for Reconsideration.
{¶ 58} Appellant, on August 22, 2016, filed a Motion for Reconsideration, seeking reconsideration of the trial court's January 26, 2016 Journal Entry denying appellant's Motion to Dismiss for lack of personal jurisdiction. Appellant, in its Motion for Reconsideration, argued that the trial court's decision to deny was based on its preliminary finding that the December 15, 2011 Agreement, which contained the forum selection clause, applied to the Wylie placement and that the jury determined that the 2011 Agreement did not apply. Appellant argued, therefore, that the trial court did not have personal jurisdiction over appellant.
{¶ 59} As is discussed above, we find that the jury did not err in finding that a new contract was created by the e-mails exchanged by the parties. As part of the e-mails, appellee sent appellant a copy of its proposed Fee Agreement with respect to Wylie. The agreement provided that "[s]ince we are performing our work in the state of Ohio, we both agree that its laws and the courts of the state of Ohio shall govern this relationship." We find that this language, which was not objected to by appellant, became part of the parties' 2014 agreement. Although not relating to venue, we find that appellant's due process rights were not violated in this case. As noted by the trial court, appellant was provided with notice and fully participated in the hearing on the Motion to Dismiss and the trial in this case.
{¶ 60} Appellant's second assignment of error is, therefore, overruled.
{¶ 61} Accordingly, the judgment of the Morrow County Court of Common Pleas is affirmed.
By: Gwin, P.J. and Earle Wise, J., concur.

See Ohio Farmers' Ins. Co. v. Cochran, 104 Ohio St. 427, 135 N.E. 537 (1922).