[Cite as *Keehan Tennessee Invest., L.L.C. v. Praetorium Secured Fund I, L.P.*, 2016-Ohio-8390.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

KEEHAN TENNESSEE INVESTMENT,
LLC, et al.

       Appellants

       v.

PRAETORIUM SECURED FUND I, L.P.,
et al.

       Appellees

C.A. No.     15CA010800


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    14CV183315

DECISION AND JOURNAL ENTRY

Dated: December 27, 2016

---

CANNON, Judge.

{¶1}    Appellants—David Keehan; Donald J. Keehan Jr.; Donald J. Keehan Sr.; Keehan Tennessee Investment, LLC; Durham Ridge Investments, LLC; Westlake Briar, LLC; 951 Realty Ltd.; and Keehan Trust Funding, LLC—appeal from the judgment of the Lorain County Court of Common Pleas granting the motion to transfer filed by Appellees Praetorium Secured Fund I, L.P. ("Praetorium"); Development Finance, L.P. ("Development Finance"); and George V. Cresson. For the reasons that follow, we affirm the judgment of the trial court.

I.

{¶2}    This case stems from the alleged breach of certain loan commitments related to a multi-million dollar development project in Tennessee ("the Project"). The following factual allegations are taken from plaintiffs' amended complaint and attached exhibits.

{¶3}    Defendant Guardian Capital Advisors, Inc. ("Guardian") entered into a loan

commitment with Keehan Tennessee Investment, LLC ("KTI") and its principals (David Keehan, Donald Keehan Jr., and Donald Keehan Sr.) to provide a $24.5 million loan ("Senior Loan"). According to the complaint, Defendant Kenneth A. Miller is the "principal, manager and/or managing partner" of Guardian. The Senior Loan was to be used to buy out equity interest holders of the Project and to pay off an existing lender that had called its loan. Guardian obtained personal cognovit guarantees from David and Donald Sr. as additional security on the Senior Loan.

{¶4} KTI negotiated several short forbearance periods with the existing lender, but Guardian failed to fund the Senior Loan within that time period as promised in the loan commitment. In exchange for a $1.2 million extension fee, the existing lender granted KTI another forbearance period on the existing loan. The extension fee was to be paid in two installments: the first by KTI, and the second by Guardian. David paid the first installment of $500,000 from the proceeds of a personal loan. Guardian failed to pay the second installment of $700,000.

{¶5} KTI had also entered into a separate loan commitment with Development Finance regarding a $3.5 million line of credit for construction of the Project ("Construction Loan"). According to the complaint, Defendant George V. Cresson held himself out to be the manager of Development Finance.

{¶6} Following Guardian's failure to pay the second installment of the extension fee on the existing loan, Development Finance (through Mr. Cresson) agreed to provide an additional $700,000 to KTI in order to satisfy the remainder of the extension fee ("Bridge Loan"). Plaintiffs assert that Mr. Cresson executed the Bridge Loan agreement on behalf of Development Finance, an entity owned and controlled by Mr. Cresson, but that "at the eleventh hour and on

the date of execution, Cresson unilaterally changed the identity of the lender from [Development Finance] to [Praetorium], another entity owned and controlled by Cresson."[1] To provide additional security for the Bridge Loan, Praetorium obtained a cognovit promissory note and personal cognovit guarantees from Donald Sr. and David. Cognovit guarantees were also executed in favor of Praetorium by Plaintiffs Durham Ridge Investments, LLC ("Durham Ridge"); Westlake Briar, LLC ("Westlake Briar"); 951 Realty Ltd. ("951 Realty"); and Keehan Trust Funding, LLC ("Keehan Trust").

{¶7} Plaintiffs allege that Guardian, Praetorium, and Mr. Cresson "demanded substantial fees and imposed onerous collateral requirements" for the Bridge Loan. Durham Ridge, Westlake Briar, and 951 Realty granted mortgages to Praetorium on certain Ohio commercial properties as collateral, and Praetorium paid off the existing mortgages with proceeds from the Bridge Loan. Keehan Trust also pledged certain equity interests in a publicly-traded company as collateral, pursuant to a security agreement with Praetorium. These requirements increased the principal amount of the Bridge Loan from $700,000 to $2.95 million.

{¶8} It is alleged that Guardian and Praetorium subsequently failed to provide the Senior Loan and the Construction Loan, respectively, by the agreed-upon date. As a result, the Project's existing lender filed a notice of foreclosure against KTI. In order to cancel the ensuing foreclosure sale, plaintiffs obtained a loan for over $17.5 million from an alternative source. Plaintiffs allege that KTI lost its majority ownership interest in the Project as a material condition of the alternative loan.

{¶9} Plaintiffs filed a breach of contract action against Guardian and Praetorium, in the

---

[1] Although the complaint alleges the Bridge Loan was provided by both Praetorium *and* Guardian, the attached promissory note and final loan agreement indicate the Bridge Loan was provided solely by Praetorium.

Lorain County Court of Common Pleas, alleging breach of the loan commitments. Defendants jointly removed the case to the United States District Court for the Northern District of Ohio, Eastern Division, on the basis of complete diversity. Plaintiffs then filed an amended complaint, which added claims for economic duress, fraud, and equitable subordination and also added Development Finance, Mr. Cresson, and Mr. Miller as new party defendants.[2]

{¶10} Guardian/Mr. Miller and Development Finance/Mr. Cresson each filed motions to transfer the case to the United States District Court for the District of Nevada in Reno, Nevada. These motions were granted on the basis of forum selection clauses in the loan commitment letters from Guardian and Development Finance, which provided for exclusive jurisdiction in Reno, Nevada. The Federal District Court of Nevada thereafter determined complete diversity was lacking, as a result of an improperly pled complaint, and remanded the case back to the Lorain County Court of Common Pleas.

{¶11} Appellees (Praetorium, Development Finance, and Mr. Cresson) then filed a joint motion to transfer the case to a Reno, Nevada state court, pursuant to Civ.R. 3(D), again based on the forum selection clauses. Plaintiffs filed a brief in opposition; Guardian and Mr. Miller did not object. The trial court granted appellees' motion and stayed the case pending transfer. Plaintiffs were ordered to refile the case in a Reno, Nevada state court within 60 days or the trial court would enter an order of dismissal without prejudice. It is from this order that plaintiffs (appellants herein) now appeal, raising four assignments of error.

---

[2] Plaintiffs had obtained a temporary restraining order in the Lorain County Court of Common Pleas which prohibited Praetorium from obtaining a cognovit judgment on the personal guarantees executed by plaintiffs. The United States District Court for the Northern District of Ohio, Eastern Division, allowed the temporary restraining order to expire without a hearing. Praetorium then took a cognovit judgment against plaintiffs in the Lorain County Court of Common Pleas. This judgment was subsequently vacated and is also on appeal as a companion case. *See Praetorium Secured Fund I, L.P. v. Keehan Tennessee Invest., LLC*, 9th Dist. Lorain No. 15CA010757, 2016-Ohio-____.

II.

{¶12} An order enforcing a forum selection clause and granting a 60-day stay pursuant to Civ.R. 3(D) is a final, appealable order. *Overhead, Inc. v. Standen Contracting*, 6th Dist. Lucas No. L-01-1397, 2002 Ohio App. LEXIS 1149, \*5-6 (Mar. 11, 2002), citing *Vintage Travel Servs., Inc. v. White Heron Travel of Cincinnati, Inc.*, 2d Dist. Montgomery No. 16433, 1998 Ohio App. LEXIS 2246 (May 22, 1998). "'The practical effect of this judgment is to preclude plaintiffs, residents of Ohio, from pursuing a legal remedy in the courts of Ohio; consequently, a substantial right of the appellants is adversely affected.'" *Id.*, quoting *Clark v. Consol. Foods Corp.*, 5th Dist. Stark No. CA 4906, 1978 Ohio App. LEXIS 9014 (Dec. 13, 1978).

III.

**Second Assignment of Error**

**The trial court erred as a matter of law by failing to submit the forum selection clauses to the trier of fact to determine the intent of the parties.**

{¶13} Appellants argue the forum selection clauses are ambiguous and thus should have been submitted to the trier of fact to determine the parties' intent.

{¶14} "Terms in a contract are ambiguous if their meanings cannot be determined from reading the entire contract, or if they are reasonably susceptible to multiple interpretations." *Foley v. Empire Die Casting Co.*, 9th Dist. Summit No. 24558, 2009-Ohio-5539, ¶12. "'The decision as to whether a contract is ambiguous and thus requires extrinsic evidence to ascertain its meaning is one of law.'" *Id.*, quoting *Ohio Historical Soc. v. Gen. Maintenance & Eng. Co.*, 65 Ohio App.3d 139, 146 (10th Dist.1989). Questions of law are reviewed by an appellate court de novo. *Butler v. Joshi*, 9th Dist. No. 00CA0058, 2001 Ohio App. LEXIS 2062, \*13 (May 9, 2001).

{¶15} All of appellants' allegations arise out of the relationship created by the loan commitments KTI entered into with Guardian and Development Finance. The term sheets attached to the Senior Loan and Construction Loan commitment letters contain identical forum selection clauses: "Governing Law and Jurisdiction. * * * The parties acknowledge and consent to the exclusive jurisdiction of any competent court in Reno, Nevada." Additionally, the Construction Loan commitment letter, itself, contains the following language: "Exclusive Jurisdiction. The parties acknowledge and consent to the exclusive jurisdiction of any competent court in Reno, Nevada."

{¶16} Appellants first assert the forum selection clauses are ambiguous because they do not expressly prohibit the filing of suit elsewhere than Reno, Nevada. The clause clearly provides, however, that Reno, Nevada has exclusive jurisdiction. "'Exclusive jurisdiction' is defined as '[a] court's power to adjudicate an action or class of actions *to the exclusion of all other courts*[.]" *EI UK Holdings, Inc. v. Cinergy UK, Inc.*, 9th Dist. Summit No. 22326, 2005-Ohio-1271, ¶18, quoting *Black's Law Dictionary* 856 (7th Ed.1999) (emphasis added). Providing for exclusive jurisdiction is thus, very simply, the positive linguistic equivalent to prohibiting the filing of suit elsewhere. This argument is not well taken.

{¶17} Appellants next assert the term "jurisdiction" could possibly refer to subject matter jurisdiction, as opposed to personal jurisdiction. Appellants argue, under that scenario, that the clause would be without effect because parties cannot confer subject matter jurisdiction upon a court by agreement.

{¶18} It is, of course, true that a court's subject matter jurisdiction "cannot be affected by agreement or consent and is beyond the scope of the litigants to confer." *Colley v. Colley*, 43 Ohio St.3d 87, 92 (1989) (Moyer, C.J., dissenting) (citations omitted). "Consent to jurisdiction,

which operates as a waiver, is significant only when *personal* jurisdiction is absent." *State ex rel. Easterday v. Zieba*, 58 Ohio St.3d 251, 256, fn. 3 (1991) (emphasis added). Further, the competency of a court, with rare exception, consistently refers to the court's subject matter jurisdiction. *See United States v. Morton*, 467 U.S. 822, 828, fn. 6 (1984) ("As far back as *Pennoyer v. Neff*, 95 U.S. 714 (1878), we drew a clear distinction between a court's 'competence' and its jurisdiction over the parties[.]"); *cf. id.* at 828.

**{¶19}** The forum selection clauses at issue provide that the parties "consent to the exclusive jurisdiction of any competent court in Reno, Nevada." The clause, in other words, states the parties agree that any court in Reno, Nevada with subject matter jurisdiction over the case (i.e., a "competent court") may exercise personal jurisdiction over the parties (i.e., "consent to"). If the term "jurisdiction" referred to subject matter jurisdiction, the phrases "consent to" and "competent court" would be rendered superfluous and meaningless. Appellants' argument is untenable.

**{¶20}** We hold the forum selection clauses are clear and unambiguous, as a matter of law.

**{¶21}** Appellants' second assignment of error is without merit.

IV.

**First Assignment of Error**

**The trial court erred as a matter of law by interpreting the forum selection clause in the loan commitments as mandatory.**

**{¶22}** Appellants assert the forum selection clauses are "permissive," as opposed to "mandatory," and thus the trial court erred in granting the motion to transfer.

**{¶23}** "The purpose of contract construction is to discover and effectuate the intent of the parties." *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313 (1996). "If a contract is

unambiguous, the language of the contract controls[.]" *Foley*, *supra*, at ¶12. Having held the forum selection clauses at issue are unambiguous, interpretation of the clauses is a question of law. *Beckler v. Lorain City School Dist. Bd. of Educ.*, 9th Dist. Lorain No. 95CA006049, 1996 Ohio App. LEXIS 2802, *5 (July 3, 1996). Questions of law are reviewed by an appellate court de novo. *Butler*, *supra*, at *13.

{¶24} "'Mandatory forum selection clauses contain clear language showing that jurisdiction is appropriate only in the designated forum. In contrast, permissive forum selection clauses authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere.'" *EI UK Holdings, supra*, at ¶20, quoting *K&V Scientific Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW")*, 314 F.3d 494, 498 (10th Circ.2002).

> Where venue is specified with mandatory language, the clause will be enforced. Where a forum selection clause states 'mandatory or obligatory language,' it is a mandatory clause that limits litigation to the designated venue. However, 'when only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive.'

*Id.* at ¶21 (citations omitted).

{¶25} In determining whether a clause is permissive or mandatory, this court has found the following factors significant: (1) reference to venue; (2) language indicating the parties' intent to make jurisdiction exclusive; and (3) language indicating a suit elsewhere is forbidden. *Renacci v. Evans*, 9th Dist. Summit No. 09CA0004-M, 2009-Ohio-5154, ¶18, citing *EI UK Holdings*, *supra*, at ¶22.

{¶26} Contrary to appellants' assertion, the test applied in *EI UK Holdings* and *Renacci* is a factor test; i.e., a court does not have to find each of the three factors is present in order to interpret a forum selection clause as mandatory. Further, absence of the word "venue" is not determinative. A finding of mandatory may be supported, however, when the only factor that

exists is language clearly indicating exclusivity. *See Renacci*, *supra*, at ¶20.

{¶27} Although there is no explicit reference to venue, the clauses do contain language indicating the parties' intent to make jurisdiction exclusive. The phrase "exclusive jurisdiction" is, without a doubt, a phrase of exclusivity. In fact, at least one court has held that the phrase "must be filed," more subtle than the phrase at hand, are "words of exclusivity." *Dayton Outpatient Ctr., Inc. v. OMRI of Pensacola, Inc.*, 2d Dist. Montgomery No. 26169, 2014-Ohio-4105, ¶18. The language in the case sub judice does not merely authorize jurisdiction in Reno, Nevada, it clearly provides that jurisdiction is appropriate in Reno, Nevada to the exclusion of all other jurisdictions. We therefore hold the forum selection clauses are mandatory, as a matter of law.

{¶28} Appellants' second assignment of error is without merit.

V.

**Third Assignment of Error**

**The trial court erred as a matter of law by enforcing the forum selection clause in the loan commitments.**

{¶29} Appellants argue against the trial court's finding that the forum selection clauses are enforceable.

{¶30} "The party challenging the forum selection clause bears a heavy burden of establishing that it should not be enforced." *Original Pizza Pan v. CWC Sports Group, Inc.*, 194 Ohio App.3d 50, 2011-Ohio-1684, ¶10 (8th Dist.) (citation omitted); *see also Conway v. Huntington Natl. Bank*, 10th Dist. Franklin No. 11AP-1105, 2013-Ohio-1201, ¶9. "Absent evidence of fraud or overreaching, a forum selection clause contained in a commercial contract between business entities is valid and enforceable, unless it can be clearly shown that enforcement of the clause would be unreasonable and unjust." *Kennecorp Mtge. Brokers, Inc. v.*

*Country Club Convalescent Hosp., Inc.*, 66 Ohio St.3d 173 (1993), syllabus; *see also Preferred Capital, Inc. v. Power Eng. Group, Inc.*, 112 Ohio St.3d 429 (2007), paragraph one of the syllabus. "The enforceability of a forum-selection clause is a question of law that we review de novo." *Original Pizza Pan*, *supra*, at ¶10; *Conway*, *supra*, at ¶9.

**{¶31}** Appellants do not challenge that the agreements at issue are between business entities nor do they assert fraud or overreaching. Appellants also do not argue the clause contained in the term sheets was not intended to govern the loan commitments. Rather, appellants raise three arguments in support of their position that enforcement of the forum selection clauses was unreasonable and unjust.

**{¶32}** Appellants first assert the clause was enforced against non-parties to the loan commitments.

**{¶33}** "Only a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract in Ohio." *Thornton v. Windsor House, Inc.*, 57 Ohio St.3d 158, 161 (1991), citing *Visintine & Co. v. New York, Chicago, & St. Louis RR. Co.*, 169 Ohio St. 505 (1959). Conversely, a non-party to a contract cannot be bound by the contract. *WashPro Express, LLC v. VERwater Environmental, LLC*, 12th Dist. Butler No. CA2006-03-069, 2007-Ohio-910, ¶9. An exception to this rule exists when a non-party "is so closely related to the dispute that it is foreseeable that the party will be bound." *Highway Commercial Servs. v. Zitis*, No. 2:07-cv-1252, 2008 U.S. Dist. LEXIS 32487, *10 (S.D. Ohio Apr. 21, 2008).[3]

**{¶34}** Some jurisdictions have applied this exception to shareholders, officers, and directors of a corporation-signatory and to corporations wholly owned and controlled by a

---

[3] We note Ohio law and federal law "treat forum selection clauses similarly." *See, e.g.*, *Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102, 1105 (6th Cir.1997), citing *Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1098, fn. 3 (6th Cir.1994) and *Interamerican Trade Corp. v. Companhia Fabricadora de Pecas*, 973 F.2d 487, 488-489 (6th Cir.1992).

signatory. *See Marano Ents. of Kansas v. Z-Teca Restaurants, L.P.*, 254 F.3d 753, 757 (8th Circ.2001); *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209-210 (7th Circ.1993). In Ohio, this exception appears to have only been applied, thus far, to agent-principal situations and to third-party beneficiaries of a contract. *See WashPro Express, supra*, at ¶13; *Barrett v. Picker Internatl., Inc.*, 68 Ohio App.3d 820, 826 (8th Dist.1990). The essential inquiry is whether, under the totality of the circumstances, "'it is fair and reasonable to bind a non-party to the forum selection clause. * * * [T]his approach places emphasis on whether it should have been reasonably foreseeable to the non-signatory that situations might arise in which the non-signatory would become involved in the relevant contract dispute.'" *Veteran Payment Sys., LLC v. Gossage*, No. 5:14CV981, 2015 U.S. Dist. LEXIS 16261, *19 (N.D. Ohio Feb. 10, 2015), quoting *Regions Bank v. Wyndham Hotel Mgt., Inc.*, No. 3:09-1054, 2010 U.S. Dist. LEXIS 23371, *6 (M.D. Tenn. Mar. 11, 2010).

**{¶35}** According to the complaint, David, Donald Jr., and Donald Sr. are principals of KTI, an Ohio limited liability company. David signed the Senior Loan and Construction Loan commitment letters as "managing member" of KTI. Both loan commitment letters indicate KTI is the "borrower" and refer to David and Donald as "sponsors" or "guarantors" of the loans.[4]

**{¶36}** It is also apparent that the Senior Loan, the Construction Loan, and the Bridge Loan, were essentially part and parcel of one large attempted transaction between plaintiffs and defendants. On February 28, 2014, the cognovit guarantees were executed in favor of Praetorium (via Mr. Cresson) on the Bridge Loan by David, Donald Sr., Durham Ridge, Westlake Briar, 951 Realty, and Keehan Trust. David signed the cognovit note on behalf of Keehan Trust as its "managing member." D.J. Keehan signed the cognovit note on behalf of

---

[4] It is not clear from the documents whether "Donald" refers to Donald Jr. or Donald Sr.

Durham Ridge and Westlake Briar as their "managing member." Denise Keehan signed the cognovit note on behalf of 951 Realty as its "member." It is unclear from the record how "Denise" is related to the other Keehans and whether "D.J." refers to Donald Jr. or another relative. As evidenced by the complaint, however, each individual-plaintiff and each entity-plaintiff share the same Ohio address, with the exception of Donald Sr. who apparently resides in Florida.

{¶37} The commitment letter for the Senior Loan was issued five days later, on March 3, 2014, by Guardian (via Mr. Miller). The Construction Loan commitment letter was also issued on March 3, 2014, by Development Finance (via Mr. Cresson) and references the non-signatory plaintiffs:

> The following persons ('Guarantors'), which shall be joint and severally liable for the Loan shall execute guaranties in form and substance acceptable to Lender: David Keehan, Donald Keehan, *and all non-borrower mortgagors*. It is contemplated that each of the guaranties will be enforced under Ohio law and each of these Guarantors, except Donald Keehan, shall be required to execute a cognovit.[5]

{¶38} The next day, March 4, 2014, Praetorium (via Mr. Cresson) and KTI entered into the final agreement on the Bridge Loan. Appellants allege the Bridge Loan was actually negotiated by Mr. Cresson initially on behalf of Development Finance. Included in the initial disbursements of the Bridge Loan were, inter alia, (1) the final installment of the extension fee to the existing lender, which Guardian failed to pay when negotiating the Senior Loan; (2) a fee to Guardian in connection with the Senior Loan; (3) a fee to Development Finance in connection with the Construction Loan; (4) and reimbursement to Praetorium for "expenses related to legal,

---

[5] As Donald Jr. was the only plaintiff who did not execute a cognovit, we assume "Donald" refers to Donald Jr. The distinction is neither relevant nor determinative to the issue.

underwriting, and due diligence services" associated with the Senior Loan and Construction Loan.

{¶39} In addition, all plaintiffs—signatory and non-signatory, alike—are suing for breach of the loan commitments. The complaint alleges all plaintiffs were damaged by the purported breach. Further, the complaint asserts the cognovit guarantees, the mortgages, and the security agreement—in addition to the underlying Bridge Loan—should all be "invalidated and rendered null and void" as a result of defendants' breach of the Senior Loan and the Construction Loan.

{¶40} Under the totality of the circumstances, we find it was foreseeable to the non-signatory plaintiffs that they would become involved in the contractual dispute between KTI and defendants. It is disingenuous for appellants to argue otherwise. The trial court's decision to bind the non-signatory plaintiffs to the forum selection clauses was both fair and reasonable. Appellants' argument is not well taken.

{¶41} Next, appellants assert there is no proof that any of the non-signatory plaintiffs waived their right to file suit against defendants in the venue of their choice. The forum selection clauses, however, are evidence of such a waiver in and of themselves. Because we hold the non-signatory plaintiffs are bound by the forum selection clauses, this argument is also not well taken.

{¶42} Finally, appellants assert there will be duplicate cases proceeding through the Ohio and Nevada court systems because of the separate suit filed by Praetorium on the cognovit note in the Lorain County Court of Common Pleas. Pursuant to the "jurisdictional priority rule," appellants argue, the case sub judice should be remanded to the Lorain County Court of Common Pleas for consolidation with the cognovit case.

**{¶43}** "[W]hen actions involving the same subject matter and the same parties are pending in two different Ohio courts that have concurrent jurisdiction, the court in which the action was first commenced has priority of jurisdiction to maintain the action, and pendency of an action may be pleaded as a defense to bar the second court's jurisdiction." *Commercial Union Ins. Co. v. Wheeling Pittsburgh Corp.*, 106 Ohio App.3d 477, 486 (2d Dist.1995), citing *State ex rel. Maxwell v. Schneider*, 103 Ohio St. 492 (1921).

**{¶44}** "'However, the fact that an action involving the same subject matter and the same parties is pending in a court of a sister state does not have the same effect.'" *Id.*, quoting *Hoppel v. Greater Iowa Corp.*, 68 Ohio App.2d 209 (9th Dist.1980). *See also Nationwide Mut. Fire Ins. Co. v. Modroo*, 11th Dist. Geauga No. 2004-G-2557, 2004-Ohio-4697, ¶12; *Newman v. Martinez*, 4th Dist. Pike No. 15CA857, 2016-Ohio-647, ¶18.

> "'The rule of priority does not apply, as a matter of duty, between courts of different states. As a matter of comity, however, a court of one state may stay a proceeding pending before it on the ground that a case involving the same subject matter and the same parties is pending in a court of another state. Also, in view of the full faith and credit clause of the Federal Constitution, once the proceeding on the same case has been finally adjudicated by the court of a sister state, res judicata effect must be given to it by the court of the forum state.'"

*Nationwide*, *supra*, at ¶13, quoting *Commercial Union*, *supra*, at 486-487, quoting 20 American Jurisprudence, 2d, Courts, Section 95, at 399 (1995).

**{¶45}** Praetorium obtained a cognovit judgment from the Lorain County Court of Common Pleas in Ohio, which was subsequently vacated. In a separate appeal, this court affirmed that judgment in part and reversed it in part; thus the matter remains pending in the Lorain County Court of Common Pleas. *See Praetorium Secured Fund I, L.P. v. Keehan Tennessee Invest., LLC*, 9th Dist. Lorain No. 15CA010757, 2016-Ohio-____. Pursuant to R.C.

2323.13(A), the Lorain County Court of Common Pleas has jurisdiction over the claims with regard to the balance due on the cognovit note, but a Reno, Nevada court does not.

**{¶46}** We held above that the forum selection clauses in the Senior Loan and the Construction Loan provide for mandatory jurisdiction in Reno, Nevada. Appellants argue there is a jurisdictional priority issue between the Ohio court and the Nevada court because both cases involve the same subject matter and the same parties. Both courts are not Ohio courts, however, and therefore appellants cannot raise the jurisdictional priority rule as a defense to enforcement of the forum selection clauses. This argument is not well taken.

**{¶47}** In short, Nevada does not have jurisdiction over the cognovit case. Ohio, due to the forum selection clause agreed to by the parties, does not have jurisdiction over the amended complaint filed in this case. The parties may choose to file a motion to stay the proceedings in either the Ohio cognovit case or in this case once initiated in a Reno, Nevada state court. We have reinstated a portion of the judgment in the cognovit case. *See Praetorium, supra.* Since it has proceeded to judgment, in part, res judicata effect must be given to it by the Nevada court in the case sub judice.

**{¶48}** Appellants' third assignment of error is without merit.

VI.

**Fourth Assignment of Error**

**The trial court erred as a matter of law by ruling that the case should be stayed, transferred or dismissed pursuant to Civ.R. 3(D).**

**{¶49}** A Civ.R. 3(D) motion to transfer raises the issue of personal jurisdiction. "'Personal jurisdiction is a question of law that appellate courts review de novo.'" *Brislin v. Albert*, 9th Dist. Summit No. 27052, 2014-Ohio-3406, ¶5, quoting *Fraley v. Estate of Oeding*, 138 Ohio St.3d 250, 2014-Ohio-452, ¶11. Civ.R. 3(D) provides:

When a court, upon motion of any party or upon its own motion, determines: (1) that the county in which the action is brought is not a proper forum; (2) that there is no other proper forum for trial within this state; and (3) that there exists a proper forum for trial in another jurisdiction outside this state, the court shall stay the action upon condition that all defendants consent to the jurisdiction, waive venue, and agree that the date of commencement of the action in Ohio shall be the date of commencement for the application of the statute of limitations to the action in that forum in another jurisdiction which the court deems to be the proper forum. If all defendants agree to the conditions, the court shall not dismiss the action, but the action shall be stayed until the court receives notice by affidavit that plaintiff has recommenced the action in the out-of-state forum within sixty days after the effective date of the order staying the original action. If the plaintiff fails to recommence the action in the out-of-state forum within the sixty day period, the court shall dismiss the action without prejudice. If all defendants do not agree to or comply with the conditions, the court shall hear the action. If the court determines that a proper forum does not exist in another jurisdiction, it shall hear the action.

In other words, "Rule 3(D) governs that unusual situation in which defendant objects to venue on the ground of improper venue and the court finds that there is not an appropriate venue within this state to which to transfer the action." Civ.R. 3(D), editor's note.

{¶50} We have already determined the forum selection clauses are unambiguous, mandatory, and enforceable. Pursuant to the clauses, the proper forum is exclusively in Reno, Nevada. Thus, there is no proper forum in the state of Ohio. Appellees have consented to the jurisdiction of Reno, Nevada, as evidenced by their joint motion to transfer. Defendants Guardian and Mr. Miller have not objected to the motion. Therefore, pursuant to Civ.R. 3(D), the trial court did not err in staying the case pending transfer to a court of competent jurisdiction in Reno, Nevada.

{¶51} As an aside, appellants extract dicta from an Ohio Supreme Court case in support of their argument that Civ.R. 3(D) does not apply to the case at bar. In *Chambers v. Merrell-Dow Pharmaceuticals, Inc.*, the Court stated:

We have found no Ohio case in which Civ. R. 3(D) has been applied, undoubtedly because it can only be applied in the extremely rare pure transitory action where

both plaintiff and defendant are non-Ohio residents and the cause of action arose outside this state, but the defendant is 'caught' and served while momentarily in Ohio.

35 Ohio St.3d 123, 132 (1988), citing Anderson's Ohio Civil Practice, Section 149.18, at 143-145 (1987); *Price v. Wheeling Dollar Savings & Trust Co.*, 9 Ohio App.3d 315 (12th Dist.1983); *Penrod v. Baltimore & Ohio RR. Co.*, 64 Ohio App.2d 216 (10th Dist.1979); *Singleton v. Denny's, Inc.*, 36 Ohio App.3d 225 (9th Dist.1987); *McWilliams v. U-Haul Internatl., Inc.*, 2d Dist. Clark No. 2254, 1986 Ohio App. LEXIS 9217 (Nov. 20, 1986); and *Gallimore v. Arcadia Natl. Life Ins. Co.*, 2d Dist. Miami No. 85CA25, 1986 Ohio App. LEXIS 6818 (May 12, 1986).

{¶52}  The Supreme Court's mention of Civ.R. 3(D) in the *Chambers* case was to dispel the argument that adoption of the Civil Rule amounted to a rejection of the common law doctrine of *forum non conveniens*.  In context, the above-quoted statement was an explanation of why Civ.R. 3(D) only applies when venue in the state of Ohio is not proper, as opposed to when venue in a particular county in Ohio is not convenient.  The Court does not hold that Civ.R. 3(D) can only be applied in this one situation.  Rather, the Court states this is the only situation in which it had been applied at the time of the 1988 decision and aphoristically presumes it to be the only situation in which it could be applied.  The Court's decision does not comment on the Rule's viability in future cases and, specifically, does not contemplate the application of the Rule to a contractual forum selection clause.  In fact, Civ.R. 3(D) has subsequently been applied to enforce valid forum selection clauses.  *See, e.g.*, *Barrett, supra*; *Four Seasons Enters. v. Tommel Fin. Servs.*, 8th Dist. Cuyahoga No. 77248, 2000 Ohio App. LEXIS 5223 (Nov. 9, 2000); *Krygsman v. Gerken*, 2d Dist. Montgomery No. 16062, 1997 Ohio App. LEXIS 2927 (July 3, 1997); *see also Brislin, supra*.  Appellants' reliance on *Chambers* is therefore misplaced.

{¶53}  Appellants' fourth assignment of error is without merit.

## VII.

{¶54} For all of the foregoing reasons, the judgment of the Lorain County Court of Common Pleas is hereby affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

TIMOTHY P. CANNON
FOR THE COURT

SCHAFER, J.
CONCURS.

CARR, P. J.
CONCURS IN JUDGMENT ONLY.

(Cannon, J., of the Eleventh District Court of Appeals, sitting by assignment.)

APPEARANCES:

ROBERT R. KRACHT, Attorney at Law, for Appellants.

RICHARD W. CLINE, Attorney at Law, for Appellees.