NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0570n.06

No. 12-4139

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jun 11, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TRATON NEWS, LLC, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| TRATON CORP., et al., | ) | STATES DISTRICT COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF OHIO |
| Defendants-Appellees. | ) | |

Before:  GIBBONS and WHITE, Circuit Judges; COHN, Senior District Judge[*]

**JULIA SMITH GIBBONS, Circuit Judge.**  Plaintiff-appellant Traton News, LLC appeals

the district court's dismissal of this suit for lack of personal jurisdiction.  Plaintiff claims that the

district court had personal jurisdiction over defendants based on a forum selection clause in a

browsewrap agreement[1] on traton.com.  Assuming, without deciding, that the browsewrap agreement

and forum selection clause are enforceable, we find that plaintiff's Lanham Act claims against

defendant Traton Homes, LLC do not fall within the scope of the forum selection clause because

---

[*]The Honorable Avern Cohn, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

[1]A browsewrap agreement discloses terms on a website that offers a product or service to the user, and the user assents by visiting the website to purchase the product or enroll in the service. *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 129 n.18 (2d Cir. 2012).  Browsewrap agreements may be contrasted with "clickwrap" agreements, which require the user to manifest assent to the terms by clicking on an icon. *Id.*

-1-

these claims do not "arise out of or relate to" the "use" of traton.com. Without personal jurisdiction over Traton Homes with respect to the Lanham Act claims, the district court properly exercised its discretion to dismiss the remaining state law claims asserted against the defendants. We therefore affirm the district court's dismissal of this action.

I.

Defendants Traton Corporation and its affiliated company Traton Homes, LLC (collectively referred to as "Traton defendants") build homes and develop communities in and around Atlanta, Georgia. Several years ago, Christopher Moses, represented by Sam Han, filed suit in Georgia state court against Traton Corporation alleging that the company trespassed on his property. *Moses v. Traton Corp.*, 650 S.E.2d 353 (Ga. Ct. App. 2007). The Court of Appeals affirmed the lower court's entry of summary judgment for Traton Corporation. *Id.* at 354. In March 2006, Moses registered Traton News, LLC as a Georgia entity ("Traton News (Georgia)"). The following month, Traton News (Georgia) applied to register the mark "Traton" with respect to "news reporting services." The U.S. Patent and Trademark Office ("PTO") registered the mark "Traton" on February 13, 2007. Moses voluntarily dissolved Traton News (Georgia) on January 15, 2008. Meanwhile, Moses moved from Georgia to Virginia and registered the entity Traton News, LLC in Virginia on September 10, 2007. The Commonwealth of Virginia cancelled Traton News, LLC on December 31, 2008, for failure to pay fees. In 2011, Han registered Traton News, LLC in Ohio ("Traton News (Ohio)"). Traton News (Ohio) is the plaintiff in this case.

Traton.com has been in operation since spring 2006. Plaintiff claims that it owns the "Traton" mark and that it operates traton.com. According to Han, traton.com posts articles on a variety of topics, including "chess, intellectual property, Traton Homes, other homebuilders in the

Atlanta area, a meteor shower, Star Trek, and others." Defendants allege that plaintiff's only purpose in operating traton.com is to publish false and defamatory information about the Traton defendants and their employees. A browsewrap agreement is located on the homepage of traton.com. It states that: "none of these materials may be used for the benefit of Traton Corp. . . . and/or its affiliates for any reason whatsoever." The browsewrap agreement includes a forum selection clause that provides that the user "consent[s] to the exclusive jurisdiction and venue of courts in or nearest to the United States District Court for the Southern District of Ohio, Western Division, in all disputes arising out of or relating to the use of this Web site."

In response to the negative information published on traton.com, Traton Homes consulted with Flammer Relations, Inc., a public relations and social media firm. In August 2010, Traton Homes hired mRELEVANCE, LLC to assist in the creation of a blog to publicize positive news and events about Traton Homes. Flammer Relations is part owner of mRELEVANCE and worked through mRELEVANCE to assist in the creation and maintenance of the blog—tratonhomesblog.com. In addition, Traton Homes has maintained its regular business website, tratonhomes.com, since before 2005. According to plaintiff, Traton Homes also has registered the domain names tratonnews.com and tratonnews.net since 2009, but has not maintained any content on those sites.

Traton News (Ohio) filed its amended complaint in the Southern District of Ohio on February 24, 2012, against Traton Corporation, Traton Homes, Flammer Relations, and mRELEVANCE. The amended complaint brings the following Lanham Act claims solely against Traton Homes: (1) cyberpiracy in violation of 15 U.S.C. § 1125(d); (2) trademark infringement in violation of 15 U.S.C. § 1114; (3) false designation in violation of 15 U.S.C. § 1125(a); and (4) false description

in violation of 15 U.S.C. § 1125(a). The amended complaint also brings breach of contract claims against Traton Corporation, Traton Homes, Flammer Relations, and mRELEVANCE. Plaintiff alleges that each defendant breached the terms of the browsewrap agreement by monitoring traton.com and using information on traton.com for the benefit of the Traton defendants.

Defendants filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), (6), and (7). The district court granted defendants' motions to dismiss for lack of personal jurisdiction. It found that Traton Homes did not consent to personal jurisdiction in the Southern District of Ohio based on the forum selection clause for two independent reasons: (1) the Lanham Act claims fall outside the scope of the forum selection clause, and (2) the browsewrap agreement is unenforceable for lack of consideration. Next, the district court determined that plaintiff did not make a *prima facie* showing that Traton Homes has sufficient contacts with the State of Ohio to satisfy the Due Process Clause of the Fourteenth Amendment. The district court concluded that it would be improper to exercise jurisdiction over the remaining breach of contract claims. Plaintiff has appealed the district court's dismissal of this action. Because we find that the Lanham Act claims fall outside the scope of the forum selection clause, we do not address the district court's alternative basis for finding that it lacked personal jurisdiction over defendants. On appeal, plaintiff has abandoned its argument that Traton Homes has sufficient contacts with the State of Ohio to confer personal jurisdiction under the Due Process Clause.

II.

This court reviews *de novo* the district court's dismissal of this action for lack of personal jurisdiction. *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 664 (6th Cir. 2005). A party may consent to the personal jurisdiction of a particular court through a forum selection clause.

-4-

*Preferred Capital, Inc. v. Power Eng'g Grp., Inc.*, 860 N.E.2d 741, 744 (Ohio 2007). A forum selection clause confers personal jurisdiction on a court over only those disputes that the parties agreed to litigate in that forum. The forum selection clause in the browsewrap agreement states: "You hereby consent to the exclusive jurisdiction and venue of courts in or nearest to the United States District Court for the Southern District of Ohio, Western Division, in all disputes arising out of or relating to the use of this Web site."

Ohio cases typically interpret the meaning of the phrases "arise out of" and "relate to" in the context of arbitration agreements.[2] Ohio has a strong public policy favoring arbitration, and when there is doubt as to whether an arbitration clause covers a dispute, such doubts should be resolved in favor of arbitration. *Council of Smaller Enters. v. Gates, McDonald & Co.*, 687 N.E.2d 1352, 1356 (Ohio 1998). By contrast, there is no principle that favors application of forum selection clauses. An arbitration clause that contains the phrase "any claim or controversy arising out of or relating to the agreement" is considered a "broad" arbitration clause. *Mak v. Silberman*, No. 95590, 2011 WL 683899, at *3 (Ohio Ct. App. Feb. 24, 2011) (slip copy). A broad arbitration clause "embraces all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Blanchard Valley Health Ass'n v. ProMedica Health Sys.*, No. 5-06-13, 2006 WL 3257716, at *6 (Ohio Ct. App. Nov. 13, 2006) (alterations omitted). However, a claim likely falls outside the scope of a broad arbitration clause "if [the] action could be maintained without reference to the contract or relationship at issue." *Silberman*, 2011 WL 683899 at *3 (internal quotation marks

---

[2]The browsewrap agreement provides that it is governed by Ohio law without regard to Ohio's conflict-of-law principles. Because we do not reach the issue whether the agreement is enforceable and neither party disputes that Ohio law applies, we assume, without deciding, that Ohio law controls in determining the scope of the forum selection clause.

omitted).  Broad arbitration clauses typically require arbitration of disputes arising out of or relating to *the agreement* containing the arbitration clause.  By contrast, the forum selection clause here requires arbitration of "all disputes arising out of or relating to *the use of this Web site*."  We therefore ask whether the Lanham Act claims have a significant relationship to the use of traton.com and whether the action could be maintained without reference to the use of traton.com.

In count one, plaintiff claims that Traton Homes violated the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d),[3] which provides for civil liability when a plaintiff proves that "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark.'"  *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218–19 (9th Cir. 2010) (quoting 15 U.S.C. § 1125(d)(1)(A)).  Plaintiff contends that Traton Homes is liable because it registered the domain names tratonnews.com and tratonnews.net and then failed to maintain any content on those sites.  Plaintiff further alleges that these domain names are confusingly similar to the "Traton" mark with respect to news reporting services.

In count two, plaintiff alleges that Traton Homes violated 15 U.S.C. § 1114, which  imposes civil liability on a person who, without consent of the registrant of a trademark, uses the mark in commerce in connection with the sale of any good or service and as a result, is likely to cause confusion.  Plaintiff claims that Traton Homes used the "Traton" mark in commerce and that its use of the term has caused confusion.

---

[3]The Anticybersquatting Consumer Protection Act is in Subchapter III of the Lanham Act.

In count three, plaintiff claims that Traton Homes violated 15 U.S.C. § 1125(a), which imposes civil liability on a person who

> in connection with any goods or services . . . uses in commerce any word, term, [or] name . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her . . . services . . . by another person[.]

Specifically, plaintiff alleges that "Traton Defendants' use of the mark ['Traton'] in reference to a blog and the link for News on that blog constitutes a false designation of origin of being associated with Traton News." Plaintiff contends that "Traton Homes'[s] use of News on its blog site is likely to cause confusion, to cause mistake, to deceive, or a combination thereof with Traton News."

In count four, plaintiff claims that Traton Homes violated 15 U.S.C. § 1125(a) by falsely describing marketing on its website as news reporting services. According to plaintiff, "Traton Homes has, in promotion, misrepresented the nature, characteristics, quality or a combination thereof by calling the self-promotion and marketing 'News' of a news reporting service."

These Lanham Act claims relate to actions taken by Traton Homes on its own websites—tratonhomes.com, tratonhomesblog.com, tratonnews.com, and tratonnews.net. Plaintiff alleges that by maintaining tratonnews.com and tratonnews.net, Traton Homes committed cyberpiracy. Plaintiff also alleges that Traton Homes committed trademark infringement, false designation, and false description by using the mark "Traton" and term "News" on tratonhomes.com and tratonhomesblog.com. Plaintiff claims that these actions violate its rights to the mark "Traton" with respect to news reporting services. The Lanham Act claims do not depend upon or involve anyone's use of traton.com. In fact, as the district court observed, counts one through four of the complaint do not mention the use of traton.com or its browsewrap agreement. Thus, the Lanham Act claims do not

have a "significant relationship" to the use of traton.com, and the Lanham Act claims can be maintained without reference to the use of traton.com.

We reject plaintiff's invitation to expand the meaning of the phrase "arise out of or relate to." Plaintiff argues that counts two through four relate to the use of traton.com because defendants accessed traton.com often in the weeks leading up to the launch of tratonhomesblog.com. Plaintiff claims that "[i]t is virtually impossible to ignore the connection between [defendants'] two-week spike in harvesting information from Traton's website and the creation of the [Traton Homes's] weblog [sic] using the harvested information, immediately following the two-week spike." Plaintiff also argues that count one is related to the use of traton.com because Traton Homes's motivation for maintaining the domain names tratonnews.com and tratonnews.net is to prevent Internet traffic from reaching traton.com. According to plaintiff, "[r]educing web traffic to Traton's website is directly related to the use of Traton's website." Plaintiff claims that the reason Traton Homes took actions that allegedly violate the Lanham Act was because it was unhappy with the content on traton.com. Even if this is true, the rights plaintiff seeks to vindicate in the Lanham Act claims do not relate to the use of traton.com because they arise from its purported ownership of the mark "Traton" and not from the browsewrap agreement. Ohio law instructs that the Lanham Act claims fall outside the scope of this forum selection clause if they "could be maintained without reference" to the use of traton.com. *Silberman*, 2011 WL 683899 at *3. As discussed above, we find that they could. Accordingly, we do not expand our inquiry to whether there are any other underlying factual connections between the use of traton.com and the Lanham Act claims or why Traton Homes acted in a way that allegedly violates the Lanham Act.

The contract claims may indeed arise out of the use of traton.com and the browsewrap agreement could potentially provide a basis for personal jurisdiction over Traton Homes. Yet, we need

not resolve that issue because no basis for federal subject matter jurisdiction exists other than the Lanham Act claims. The district court did not abuse its discretion in refusing to exercise supplemental jurisdiction over the breach of contract claims and dismissing them without prejudice.

III.

Because we find that the Lanham Act claims fall outside the scope of the forum selection clause, we affirm the district court's dismissal of this action for lack of personal jurisdiction.