IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 10, 2019 Session

## ENHANCEWORKS, INC. v. DROPBOX, INC.

**Appeal from the Chancery Court for Davidson County**
**No. 18-241-BC        Joseph P. Binkley, Jr., Judge**

_____

### No. M2018-01227-COA-R3-CV

_____

This appeal involves the issue of personal jurisdiction over Appellee, a Delaware corporation with its principal place of business in San Francisco, California. The trial court, on Appellee's Tennessee Rule of Civil Procedure 12.02(2) motion to dismiss for lack of personal jurisdiction, decided it lacked personal jurisdiction and dismissed the case. Appellant appeals. Discerning no error, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S. and ANDY D. BENNETT, J., joined.

John R. Jacobson, Timothy L. Warnock, Stuart A. Burkhalter, Nashville, Tennessee, for the appellant, EnhanceWorks, Inc.

Brian M. Willen, New York, New York, John Mellyn, Washington, D.C., Robb S. Harvey, Nashville, Tennessee for the appellee, Dropbox, Inc.

### OPINION

### I. Background

Charlie Corts is a resident of Nashville, Tennessee and has a background in digital media and software development. From 2012 through 2014, Mr. Corts developed and eventually launched the application ("app") "Expo." Expo is a "mobile app solution that allows a business or individual to create a custom-branded interface that sits on top of cloud storage services such as Box, Dropbox, Google Drive, or Microsoft OneDrive and makes it simple to organize, present, and share content." Mr. Corts founded

EnhanceWorks, Inc. ("EnhanceWorks," or "Appellant"), a Delaware corporation with its principal place of business in Nashville, Tennessee, for the purpose of further developing and bringing Expo to the marketplace. On March 7, 2014, the first version of Expo became available for download in the App Store. After Expo's launch, Mr. Corts began searching for potential customers, partners, investors, and acquirers for the app; he presented at conferences, and used his connections to pitch Expo to established individuals and entities within the software industry.

In early 2015, Paul Francis, who is not a party to this appeal, introduced Mr. Corts to Robert Mylod, Jr., a member of the Board of Directors of Dropbox, Inc. ("Dropbox," or "Appellee"). Mr. Mylod resides in Michigan and has been a member of Dropbox's Board of Directors since August 2014. Dropbox is a Delaware corporation with its principal place of business in San Francisco, California. Mr. Francis, on behalf of EnhanceWorks, contacted Mr. Mylod to determine whether Mr. Mylod, on behalf of Dropbox, would be interested in Expo as a potential partner, investor, or purchaser. Mr. Francis also inquired whether Mr. Mylod would provide Mr. Corts with feedback regarding Expo. EnhanceWorks alleges that Mr. Francis transmitted, on behalf of EnhanceWorks, confidential "ideas, documents, and information includ[ing] a slideshow presentation, . . . a link to an online video, and a link to Expo's newly launched website" to Dropbox and its Board of Directors.

On March 18, 2015, Mr. Francis facilitated an email exchange between Messrs. Mylod and Corts. Mr. Francis informed Mr. Corts that Mr. Mylod had reviewed the documents and information and had spoken to "one or two people at Dropbox about the idea." On March 19, 2015, Mr. Corts replied to Mr. Francis's email and asked Mr. Mylod if he would be available for a telephone call in the near future. That same day, Mr. Mylod replied to Mr. Corts's email stating that he was available for a telephone call the next day. On March 20, 2015, Mr. Corts emailed Mr. Mylod stating that he called Mr. Mylod, left him a voicemail, and requested a call back. Mr. Mylod returned Mr. Corts's call later that day. EnhanceWorks alleges that during this telephone call Mr. Mylod told Mr. Corts that "Expo looked like a 'cool UI [user interface]' and a different way of visualizing files" but informed Mr. Corts that the app "had no practical value for Dropbox." Additionally, EnhanceWorks alleges that Mr. Mylod discouraged Mr. Corts from further engaging in development and promotion of Expo. Specifically, Mr. Corts alleges that Mr. Mylod stated that the app was a "waste of time" and opined that Mr. Corts should choose a different career path. On March 30, 2015, Mr. Corts emailed Mr. Mylod thanking him for the telephone call and his feedback. Mr. Corts continued to promote Expo after the call.

On October 17, 2017, Dropbox launched "Dropbox Professional," an enhanced version of Dropbox, with a $19.99 monthly fee for users. One of Dropbox Professional's premium features is "Dropbox Showcase." EnhanceWorks alleges that Dropbox Showcase is "an application that is an *indistinguishable copy of Expo*" (emphasis

included in original). Furthermore, EnhanceWorks alleges that Dropbox Showcase's website and marketing materials are almost identical to Expo's website and marketing materials.

On March 7, 2018, EnhanceWorks filed a complaint in Davidson County Chancery Court, alleging: (1) breach of contract; (2) breach of the duty of good faith and fair dealing; (3) breach of confidence; (4) intentional misrepresentation; (5) negligent misrepresentation; (6) implied-in-fact contract; (7) unfair competition; (8) intentional interference with business relations; and (9) violation of the Tennessee Consumer Protection Act ("TCPA"). On March 22, 2018, the case was transferred to the Business Court Pilot Project ("trial court"). On April 27, 2018, Dropbox filed a motion to dismiss for lack of personal jurisdiction. On June 8, 2018, the trial court heard Dropbox's motion to dismiss. By order of June 26, 2018, the trial court granted the motion and dismissed the case. EnhanceWorks appeals.

## II. Issues

EnhanceWorks raises one issue for review, i.e., whether the trial court erred when it granted Dropbox's motion to dismiss for lack of personal jurisdiction.

## III. Standard of Review

"The plaintiff bears the ultimate burden of demonstrating that the trial court may properly exercise personal jurisdiction over a defendant." *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 643 (Tenn. 2009) (citing *Chenault v. Walker*, 36 S.W.3d 45, 56 (Tenn. 2001); *Davis Kidd Booksellers, Inc. v. Day-Impex, Ltd*., 832 S.W.2d 572, 577 (Tenn. Ct. App. 1992)). However, "[t]his burden is ordinarily not a heavy one, because personal jurisdiction need only be demonstrated by a preponderance of the evidence." *Id.* (citations omitted).

A defendant may challenge personal jurisdiction by filing a Tennessee Rule of Civil Procedure 12.02(2) motion to dismiss. *Id.* at 643-44. The defendant may or may not choose to support its motion with affidavits or other evidentiary materials. *Id*. at 644 (citing *Humphreys v. Selvey*, 154 S.W.3d 544, 550 n.5 (Tenn. Ct. App. 2004)). Here, Dropbox did not file an affidavit or other evidentiary materials; therefore, the trial court reviewed only EnhanceWorks's complaint. "Under Tennessee law, the factual allegations in the plaintiff's complaint must establish sufficient contacts between the defendant and this state with reasonable particularity." *First Cmty. Bank, N.A. v. First Tennessee Bank, N.A.*, 489 S.W.3d 369, 383 (Tenn. 2015). Therefore, "the trial court's responsibility is to determine whether the plaintiff has alleged or presented sufficient facts to survive the motion to dismiss." *Gordon*, 300 S.W.3d at 644 (citing *Progeny Mktg. v. Farmers & Merchs. Bank*, No. M2003-02011-COA-R3-CV, 2005 WL 819732, at *2 (Tenn. Ct. App. Apr. 7, 2005)). The trial court must take as true all of the factual

allegations in the plaintiff's complaint and supporting papers, if any, and must resolve all factual disputes in the plaintiff's favor. *Id.* (citing *Chenault*, 36 S.W.3d at 56; *Mfrs. Consolidation Serv., Inc., v. Rodell*, 42 S.W.3d 846, 855 (Tenn. Ct. App. 2000)). "Dismissal is proper only if all the specific facts alleged by the plaintiff collectively fail to establish a prima facie case for personal jurisdiction." *Id.* (citing *Mfrs. Consolidation Serv., Inc.*, 42 S.W.3d at 855).

A decision regarding the exercise of personal jurisdiction over a defendant involves a question of law, which we review "de novo with no presumption of correctness for the purpose of determining whether the plaintiff has made out a prima facie basis for the exercise of personal jurisdiction over the defendant." *Id.* at 645. The question before us, then, is whether, taking the plaintiff's factual allegations as true and resolving all reasonably disputed facts in the plaintiff's favor, the plaintiff has shown, by a preponderance of the evidence, that Tennessee courts may properly exercise jurisdiction over the defendant. *See State v. NV Sumatra Tobacco Trading Co*., 403 S.W.3d 726, 739 (Tenn. 2013).

## IV. Analysis

Tennessee's long-arm statute permits the courts of this state to exercise jurisdiction on "'[a]ny basis not inconsistent with the constitution of this state or of the United States.'" *Mfrs. Consolidation Serv., Inc*., 42 S.W.3d at 855 (quoting Tenn. Code Ann. §§ 20-2-214(a)(6), 20-2-225(2)). "The due process requirements of the Tennessee Constitution are co-extensive with those of the United States Constitution," and our courts "have generally hewn closely to the United States Supreme Court's precedents." *Advanced Sec. Servs. Evaluation & Training, LLC v. OHR Partners Ltd.*, No. M2017-00249-COA-R3-CV, 2018 WL 1391626, at *6 (Tenn. Ct. App. Mar. 20, 2018) (quoting *NV Sumatra*, 403 S.W.3d 726 at 751). "When a state's long-arm statute authorizes the assertion of personal jurisdiction to the limits of federal due process, as does Tennessee's long-arm statute, the issue becomes simply whether the trial court's exercise of personal jurisdiction over the defendant meets due process requirements." *Mfrs. Consolidation Serv., Inc*., 42 S.W.3d at 855. "[D]ue process obligates the courts to ascertain whether it is 'fair and substantially just to both parties to have the case tried in the state where the plaintiff has chosen to bring the action.'" *Gordon*, 300 S.W.3d at 646 (quoting *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 335 (Tenn. 1985)). A state cannot enter a binding judgment against a defendant that has "'no contacts, ties or relations'" with the state. *NV Sumatra*, 403 S.W.3d at 743 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980)). However, the United States Supreme Court announced long ago that "due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The Court's

"minimum contacts" language "has been the crux of personal jurisdiction in America ever since *International Shoe* was decided." *NV Sumatra*, 403 S.W.3d at 741-42.

"Federal and state courts now recognize two varieties of personal jurisdiction—specific jurisdiction and general jurisdiction." *Gordon*, 300 S.W.3d at 647. General jurisdiction "may be asserted when the plaintiff's cause of action does not arise out of and is not related to the nonresident defendant's activities in the forum state." *Id.* As stated by the *Gordon* Court,

> [t]he threshold for satisfying the requirements for general jurisdiction is substantially higher than the requirements for establishing specific jurisdiction. 4 Charles Alan Wright & Arthur R. Miller Federal Practice and Procedure § 1067.5, at 517. An assertion of general jurisdiction must be predicated on substantial forum-related activity on the part of the defendant. The nonresident defendant's contacts with the forum state must be sufficiently continuous and systematic to justify asserting jurisdiction over the defendant based on activities that did not occur in the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. [408,] at 416 [(1984)], 104 S.Ct. 1868; *Perkins v. Benguet Consol. Mining Co.*, 342 U.S.[437,] at 448 [(1952)], 72 S.Ct. 413; *Lindsey v. Trinity Commc'ns, Inc.*, 275 S.W.3d [411,] at 417 [(2009)]; *see also* 4 Federal Practice and Procedure § 1067.5, at 507.

*Id.* at 647-48 (footnote omitted). "Specific jurisdiction may be asserted when the plaintiff's cause of action arises from or is related to the nonresident defendant's activities in or contacts with the forum state." *Id*. at 647. In order to invoke specific jurisdiction, the plaintiff must show that the nonresident defendant has purposefully established significant contact with the forum state and that the plaintiff's cause of action arises out of or is related to these activities or contacts. *Id*. (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). The Tennessee Supreme Court "reiterate[d] the law of specific personal jurisdiction, as it applies in Tennessee[,]" in *NV Sumatra*:

> Due process permits a state to enforce its judgments against a defendant only when the defendant has sufficient minimum contacts with the state that jurisdiction does not offend traditional notions of fair play and substantial justice. Minimum contacts are present when the defendant's purposeful conduct and connection with the forum state are such that the defendant avails itself of the benefits and protections of the state's laws and should, therefore, reasonably anticipate being haled into that state's courts.

> Assessing minimum contacts involves a two-part test. The first step is the fact-gathering exercise of identifying the relevant contacts. The plaintiff is required to establish that minimum contacts exist by a

preponderance of the evidence. The court should consider the quantity of the contacts, their nature and quality, and the source and connection of the cause of action with those contacts. A defendant's contacts are sufficiently meaningful when they demonstrate that the defendant has purposefully targeted Tennessee to the extent that the defendant should reasonably anticipate being haled into court here.

If the court finds sufficient minimum contacts, then the inquiry should proceed to the second step. At step two, the defendant bears the burden of showing that, despite the existence of minimum contacts, exercising jurisdiction would be unreasonable or unfair.

*NV Sumatra*, 403 S.W.3d at 759-60. "Both steps call for a careful, not mechanical, analysis of the facts of each case with particular focus on the defendant, the forum, and the nature of the litigation." ***Davis Kidd Booksellers, Inc.***, 832 S.W.2d at 575.

EnhanceWorks concedes that Tennessee cannot exercise general personal jurisdiction over Dropbox. Therefore, our review and analysis concern only specific personal jurisdiction. In applying the two-part test from *NV Sumatra*, we first identify Dropbox's alleged "relevant contacts" with Tennessee. *NV Sumatra*, 403 S.W.3d at 759. In its complaint, EnhanceWorks alleges two points of contact: (1) the initial contact via Mr. Mylod's email and telephone call; and (2) Dropbox accessing EnhanceWorks's public website a few years later. After identifying the relevant contacts, we consider the "quantity of the contacts, their nature and quality, and the source and connection of the cause of action with those contacts." *Id.* Dropbox's and Mr. Mylod's contacts are sufficiently meaningful if they demonstrate that Dropbox purposefully targeted Tennessee such that Dropbox should reasonably anticipate being haled into court here. *Id.* We turn to those questions.

### A. Emails and Phone Call

The first alleged point of contact between Dropbox and Tennessee concerns an email and a telephone call. As described, *supra*, Mr. Francis, at EnhanceWorks's request, made the initial email connection between EnhanceWorks and Mr. Mylod. Thereafter, Mr. Corts emailed Mr. Mylod and requested a telephone call with him. Mr. Mylod's reply email was simply: "Hi Charlie, [n]ice to meet you. I'm available in the late morning tomorrow for a call if you are. How about 11:30 am?" Mr. Corts called Mr. Mylod at the agreed time, but Mr. Mylod did not answer. Mr. Mylod returned Mr. Corts's call the same day. EnhanceWorks alleges that, during the call, Mr. Mylod stated, *inter alia*, that Expo had a "cool UI [user interface]" but "no practical value for Dropbox." EnhanceWorks further alleges that Mr. Mylod discouraged Mr. Corts from continuing to develop Expo. After the telephone call, Mr. Corts sent Mr. Mylod a follow-up email thanking him for his time and advice. There is no allegation that Mr.

Mylod responded to the follow-up email. Therefore, EnhanceWorks's complaint alleges only two possible initial points of contact between Mr. Mylod, on behalf of Dropbox, and Tennessee: (1) Mr. Mylod's response to Mr. Corts's email; and (2) Mr. Mylod's return telephone call to Mr. Corts.

In applying the *NV Sumatra* test, we consider the quantity of the contacts, their nature and quality, and the source and connection of the cause of action with these contacts. *NV Sumatra*, 403 S.W.3d at 759-60. First, the number of the contacts is only two: Mr. Mylod returned an email, and Mr. Mylod returned a telephone call. The nature, quality, and source of the email and the telephone call were both responses to Mr. Corts's initial contact. Next, we consider the connection between the alleged causes of action and the email response and the connection between the alleged causes of action and the return telephone call. As set out above, the entire substance of Mr. Mylod's response email was to set a time for a telephone call that Mr. Corts requested; it does not relate to EnhanceWorks's alleged causes of action. However, even if we assume that Mr. Mylod's email was connected to a cause of action (which we do not) EnhanceWorks would still be required to demonstrate that Mr. Mylod and Dropbox knew that Mr. Corts and EnhanceWorks were located in Tennessee in order to show that Dropbox purposefully directed its email response to Tennessee. *Rice v. Karsch*, 154 Fed. Appx. 454, 462 (6th Cir. 2005) ("Finding personal jurisdiction over an individual merely because he sends an email to a generic email address is incomprehensible to th[e] court."); *Shrader v. Biddinger*, 633 F.3d 1235, 2148 (10th Cir. 2011) (citing *Rice*, 154 Fed.Appx. at 462) ("[I]f the plaintiff does not show that the defendant otherwise knew where the recipient was located, the email itself does not demonstrate purposeful direction of the message to the forum state, even if that happens to be where the recipient lived."). EnhanceWorks failed to allege specific facts from which to conclude or infer that Mr. Mylod knew he was emailing Mr. Corts in Tennessee. Furthermore, Mr. Corts's email address was sufficiently generic that Mr. Mylod would not know he was emailing someone in Tennessee. Our analysis now shifts to Mr. Mylod's alleged statements made during the telephone call.

As discussed, *supra*, EnhanceWorks alleged nine causes of action in its complaint: (1) breach of contract; (2) breach of the duty of good faith and fair dealing; (3) breach of confidence; (4) intentional misrepresentation; (5) negligent misrepresentation; (6) implied-in-fact contract; (7) unfair competition; (8) intentional interference with business relations; and (9) violation of the TCPA. On appeal, EnhanceWorks alleges that Dropbox created a fraudulent scheme and aimed it at Tennessee when Mr. Mylod/Dropbox discouraged Mr. Corts from further developing Expo and then developed Dropbox Showcase, an exact replica of Expo. Specifically, EnhanceWorks's complaint states:

> 29. Little did Mr. Corts know, however, that the discouragement of
> Dropbox, Mr. Mylod, the Board of Directors of Dropbox, Drew Houston

and Dennis Woodside was apparently a ruse, as, upon information and belief, Dropbox, Mr. Mylod, the Board of Directors of Dropbox, Drew Houston and Dennis Woodside had decided to simply take the idea, documents, and information and create an identical application for Dropbox. Further, upon information and belief, because they wanted to discourage a competitor in the marketplace and knowing full well how pivotal a communication from Dropbox would be to the development and expansion of an app like Expo, Mr. Mylod, Dropbox, the Board of Directors of Dropbox, Drew Houston and Dennis Woodside also purposefully told Mr. Corts that his product was worthless in an effort to, among other things, compete with EnhanceWorks unfairly and ultimately scuttle the development of Expo.

EnhanceWorks argues that the connection between Mr. Mylod's alleged comments during the telephone call and its causes of action establish that Dropbox purposefully targeted Tennessee. In making this argument, EnhanceWorks urges this Court to apply the Sixth Circuit Court of Appeals' analysis in *Neal v. Janssen*, 270 F.3d 328 (6th Cir. 2001). The sole issue presented in *Neal* was whether the district court properly exercised personal jurisdiction over the defendant. *Id.* at 330. The plaintiffs, residents of Tennessee, owned a dressage horse they wanted to sell. *Id.* The defendant, a Belgian resident, agreed to serve as the plaintiffs' agent in selling the horse and take a 10% commission on the sale. *Id.* Importantly, while the defendant was working with the plaintiffs, he "made phone calls and sent facsimiles to [the] plaintiffs in Tennessee on several occasions . . . to discuss the sale of the horse and to present offers to purchase the horse made by third parties." *Id.* Later, the defendant called one of the plaintiffs' sons, a Tennessee resident, and stated that he had a prospective buyer who would pay $312,000.00 for the horse. *Id.* The defendant explained that he would waive his commission if the plaintiffs accepted the offer. *Id.* The plaintiffs accepted the offer and soon after received a wire transfer into their Tennessee bank account for $311,964.50. *Id.* Later, the plaintiffs learned that the buyer paid the defendant $480,000.00 for the horse. *Id.*

The plaintiffs filed an action against the defendant in federal district court in Tennessee for breach of fiduciary duty and fraud. *Id.* The defendant filed a motion to dismiss for lack of personal jurisdiction, which the district court denied. *Id.* at 330-31. Subsequently, the matter was tried to a jury without the defendant present. The jury awarded the plaintiffs $250,000.00 in compensatory damages and $250,000.00 in punitive damages. *Id.* at 331. On appeal, the defendant again argued that the district court could not exercise personal jurisdiction over him. *Id.* As part of its analysis, the Sixth Circuit opined that "[t]he acts of making phone calls and sending facsimiles into the forum, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action." *Id.* at 332 (internal citations omitted). Further, the Sixth Circuit explained that "[w]hen the actual content of

the communications into the forum gives rise to an intentional tort action, that alone may constitute purposeful availment." *Id.* Relying on *Neal*, EnhanceWorks argues that, like the defendant in *Neal*, Dropbox created a fraudulent scheme and aimed it at Tennessee. The scheme, according to EnhanceWorks, was discouraging Mr. Corts from continuing to develop Expo because Dropbox had the intention of developing Dropbox Showcase, an Expo replica.

Dropbox's and Mr. Mylod's contact with Tennessee is clearly distinguishable from the *Neal* defendant's contact with Tennessee. Unlike Mr. Mylod, the defendant in *Neal*, over several months, continuously called and sent facsimiles to Tennessee in furtherance of the established business relationship he had with the plaintiffs. Mr. Mylod's email and telephone call to a resident of Tennessee were merely responses to Mr. Corts's contacts. The conversations were largely one-sided with the substance of the telephone call being Mr. Mylod's communication of his thoughts concerning Expo. "A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden v. Fiore*, 571 U.S. 277, 286 (2014). Even taking EnhanceWorks's allegations as true, Dropbox did not aim its actions at Tennessee. Rather, any action on Dropbox's part to intercept and sell Expo was accomplished, if at all, in California not in Tennessee. In short, Dropbox's contacts with Tennessee were not sufficiently meaningful such that it should reasonably anticipate being haled into court here. It is not enough that EnhanceWorks alleged that the fraudulent behavior was suffered by a Tennessee resident. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290.

"For a State to exercise jurisdiction consistent with due process, the defendant's suit related conduct must create a substantial connection with the forum." *Id.* at 284. Here, Mr. Mylod's conduct, and therefore Dropbox's conduct, did not create a substantial connection with Tennessee. To the contrary, Mr. Mylod's two contacts were with Mr. Corts who happened to live in Tennessee. In determining whether minimum contacts exist, we analyze "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285. Furthermore, Mr. Mylod did not make the initial connection with Mr. Corts or with EnhanceWorks. Only after Mr. Francis first communicated with Mr. Corts and Mr. Mylod, and Mr. Corts communicated with Mr. Mylod did Mr. Mylod return communication. Mr. Mylod was simply responding to the initial contacts. Mr. Mylod never targeted Tennessee. *See NV Sumatra*, 403 S.W.3d at 759-60. Even though Mr. Mylod, on behalf of Dropbox, sent one email and made one return telephone call to Mr. Corts in Tennessee, for the reasons discussed above, the quality and nature of these contacts fall short of the requirements of due process. EnhanceWorks has failed to allege facts sufficient to demonstrate that this was more than a single isolated call where Mr. Mylod and Dropbox were unaware that they were dealing with Tennessee. *Cf. Sledge v. Indico System Resources, Inc.*, 68 F.

Supp. 3d 834, 845 (W.D. Tenn. 2014) (finding that the defendant knowingly made numerous communications into Tennessee for his own gains, thereby availing himself of the forum). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *First Cmty. Bank, N.A.*, 489 S.W.3d at 393-94 (citing *Walden*, 571 U.S. at 284-85 (quoting *Burger King*, 471 U.S. at 475)). Mr. Mylod's reply email and telephone call to Mr. Corts are the "random, fortuitous, or attenuated" contacts the Supreme Court warned against in *Burger King*. *See Burger King*, 471 U.S. at 475. We agree with the trial court that Mr. Mylod's email and telephone communications with Mr. Corts did not purposefully target Tennessee such that Dropbox should reasonably anticipate being haled into court here. *NV Sumatra*, 403 S.W.3d at 759-60. Therefore, EnhanceWorks has not established that Mr. Mylod/Dropbox's reply email and telephone call constitute sufficient minimum contacts with Tennessee. *Id.*

## B. Website

The second alleged point of contact between Dropbox and Tennessee concerns Dropbox accessing Expo's public website. Specifically, EnhanceWorks alleged in its complaint that

> [a]long with creating an application that is nearly identical to Expo, Dropbox also appears to have used the Expo website and Expo marketing materials to create Dropbox Showcase's website and marketing material, while providing only perfunctory revisions in an apparent effort to avoid detection of its copying[.]

Essentially, EnhanceWorks argues that Dropbox accessed Expo's public website and copied materials from it. Indeed, EnhanceWorks does not specifically allege that Dropbox actually accessed the website; the complaint states only that "Dropbox . . . **appears to have used** the Expo website." (emphasis added).

Tennessee case law is rather sparse on the question of how personal jurisdiction is related to the Internet and contacts made through that medium. We find guidance, however, in the case law of our sister states. In *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002), the Fourth Circuit Court of Appeals articulated a new test for specific personal jurisdiction in the Internet era, to-wit:

> [A] State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

- 10 -

**Under this standard, a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received. Such passive Internet activity does not generally include directing electronic activity into the State with the manifested intent of engaging business or other interactions in the State thus creating in a person within the State a potential cause of action cognizable in courts located in the State**.

*Id.* (emphasis added).[1] "This standard for reconciling contacts through electronic media with standard due process principles is not dissimilar to that applied by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984)." *Id.* In *Calder*, the Supreme Court held that personal jurisdiction was proper in California based on the "effects" of the defendants' conduct in Florida because "California [was] the focal point both of the story and of the harm suffered." *Calder*, 465 U.S. at 788-90. "Analogously, under the standard [adopted by the Fourth Circuit], specific jurisdiction in the Internet context may be based only on an out-of-state person's Internet activity directed at [the forum state] and causing injury that gives rise to a potential claim cognizable in [the forum state]." *ALS Scan, Inc.*, 293 F.3d at 714.

In 2011, the Tenth Circuit Court of Appeals addressed the complexity of personal jurisdiction in the Internet age in *Shrader v. Biddinger*, 633 F.3d 1235 (10th Cir. 2011).

---

[1] In articulating this new test, the *ALS Scan, Inc.* Court adopted the model developed in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D. Pa. 1997). *ALS Scan, Inc.*, 293 F.3d at 713. While the majority of jurisdictions have adopted the *Zippo* test, including the Sixth Circuit Court of Appeals, according to our research, Tennessee courts have yet to formally adopt it. In *Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 678 (6th Cir. 2005), the Sixth Circuit explained the *Zippo* test:

> The "operation of an Internet website can constitute the purposeful availment of the privilege of acting in a forum state . . . if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) (internal quotations omitted). In evaluating whether the defendant's contact with the forum state constituted purposeful availment, this and other circuits have used the "Zippo sliding scale" approach, which distinguishes between interactive websites, where the defendant establishes repeated online contacts with residents of the forum state, and websites that are passive, where the defendant merely posts information on the site. *See, e.g.*, *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002) (citing *Zippo Mfg. Co.*, 952 F.Supp. at 1124; *Revell v. Lidov*, 317 F.3d 467, 472 (5th Cir. 2002)). Interactive websites can subject the defendant to specific personal jurisdiction, whereas passive websites are less likely to confer such jurisdiction. *Neogen Corp.*, 282 F.3d at 889-91.

*Id.* While we conclude that the *Zippo* test would be concordant with Tennessee case law concerning personal jurisdiction, it does not apply to the facts of this case. The *Zippo* test is applicable when the defendant operates a website that can be accessed from any jurisdiction. In this case, the defendant is accused of accessing the plaintiff's website.

The Tenth Circuit explained that "[t]he basic problem with relating [Internet] activities[,] [such as hosting a website, posting on the Internet, or sending mass emails,] directly to the general principles developed pre-[I]nternet is that, in a sense, the [I]nternet operates 'in' every state regardless of where the user is physically located, potentially rendering the territorial limits of personal jurisdiction meaningless." *Shrader*, 633 F.3d at 1240. To avoid subjecting every person who uses the Internet to personal jurisdiction in every state, the law must adapt and grow alongside technology. "[I]n considering what 'more' could create personal jurisdiction for such [Internet] activities, courts look to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." *Shrader*, 633 F.3d at 1241. Applying the *ALS Scan, Inc.* test, the *Shrader* court concluded that "merely posting information on the [I]nternet does not, in itself, subject the poster to personal jurisdiction wherever that information may be accessed." *Shrader*, 633 F.3d at 1244.

The Fourth Circuit's test in *ALS Scan, Inc.* is harmonious with Tennessee common law concerning specific personal jurisdiction. As articulated by the Tennessee Supreme Court in *NV Sumatra*, "[a] defendant's contacts are sufficiently meaningful when they demonstrate that the defendant has purposefully targeted Tennessee to the extent that the defendant should reasonably anticipate being haled into court here." *NV Sumatra*, 403 S.W.3d at 760. Applying *NV Sumatra* to Internet contacts, we reason that for a defendant's Internet contacts to be sufficiently meaningful, they must be more than "passive Internet activity" such that the defendant directs electronic activity into Tennessee "with the manifested intent of engaging business or other interactions in the State thus creating in a person within the State a potential cause of action cognizable in [Tennessee]." *ALS Scan, Inc.*, 293 F.3d at 714.

Following the reasoning of *ALS Scan, Inc.* and *Shrader*, we conclude that merely accessing a public website from the Internet does not, in itself, subject the individual accessing the site to personal jurisdiction wherever the website may be located. *See Shrader*, 633 F.3d at 1244; *ALS Scan, Inc.*, 293 F.3d at 714; *see also Wright v. Writers Coffee Shop, LLC*, No. 1:17-CV-355, 2018 WL 6729642, at *4 (E.D. Tenn. Dec. 21, 2018) ("Without knowing that Plaintiff was a resident of Tennessee, Defendants could not have purposefully availed themselves of the privilege of causing consequences in Tennessee by interacting with Plaintiff online."); *Traton News, LLC v. Traton Corp.*, 914 F. Supp. 2d 901, 912 (S.D. Ohio 2012), aff'd in part, 528 F. App'x 525 (6th Cir. 2013) (concluding that the defendant's act of using the plaintiff's website was insufficient to confer personal jurisdiction over the defendant, regardless of how many times the defendant visited the website). Observing a public website on the Internet is "passive Internet activity," which "does not generally include directing electronic activity into the State." *ALS Scan, Inc.*, 293 F.3d at 714. A person accessing a public website would not "reasonably anticipate being haled into court" wherever the website might be maintained. *Id.*; *NV Sumatra*, 403 S.W.3d at 760. From our review of the complaint, EnhanceWorks

does not allege sufficient facts to demonstrate that, by accessing Expo's website and copying its materials, Dropbox "deliberately directed its message [or any electronic activity] at an audience in the forum state . . . ." *Shrader*, 633 F.3d at 1241.

Nonetheless, EnhanceWorks argues that when "a defendant is alleged to have accessed a website and wrongfully obtained information from that website . . . the contact at issue is deemed to have occurred in the company's physical location." Therefore, according to EnhanceWorks, because Dropbox allegedly stole information from Expo's website, the contact is deemed to have occurred in Tennessee, EnhanceWorks's physical location. EnhanceWorks cites two cases for this proposition, *Premedics, Inc. v. Zoll Medical Corporation*, No. 3:06-0716, 2007 WL 3012968 (M.D. Tenn. Oct. 9, 2007) and *Facebook, Inc. v. ConnectU LLC*, No. C 07-01389 RS, 2007 WL 2326090 (N.D. Cal. Aug. 13, 2007). These cases concern motions to dismiss for lack of personal jurisdiction. In analyzing whether the defendants purposefully availed themselves of the privilege of conducting activities in the forum states, both federal courts applied the *Calder* "effects test." *Calder*, 465 U.S. at 788-90. "In cases involving intentional conduct, the 'purposeful availment' prong [of specific personal jurisdiction] can be satisfied by meeting the 'effects test' . . . ." *Faceboook, Inc.*, 2007 WL 2326090, at *3 (citing *Calder*, 465 U.S. at 788-90). The "effects test" "finds personal jurisdiction 'where an individual purposefully directs activities towards the forum state with the intent to cause harm there.'" *Predemics, Inc.*, 2007 WL 3012968, at *4 (citing *Koch v. Local 438*, 54 Fed. Appx. 807, 810 (6th Cir. 2002)).

In *Premedics*, one of the defendants "accessed Premedics' [I]nternet website, [] navigated onto the AED Manager portion of the website . . ., [and] created an unauthorized test account for the AED Manager, an account that [was] only distributed to Premedics' own web developers." *Premedics, Inc.*, 2007 WL 3012968, at *1. The defendants were then able to receive the automated "action item" emails, which Premedics claimed was a proprietary component of its system. *Id.* The *Premedics* court acknowledged the challenges of determining purposeful availment when the Internet is involved. *Id.* at *4. Ultimately, the court concluded that the *Calder* effects test was satisfied because the defendants acted intentionally when they "navigated to Premedics' website, logged into the AED Manager using a falsified test account, and obtained informational emails indicating how AED Manager operates . . . ." *Premedics, Inc.*, 2007 WL 3012968, at *5. Further, the *Premedics* court found that "Premedics' physical location and incorporation in the state of Tennessee [were] facts plainly stated on the home page of the Premedics website . . . ." *Id.*

Similarly, in *Facebook*, the allegation was that the defendants gained unauthorized access to Facebook "by logging into [it] using borrowed or falsified login information, and then importing profile and email account information from a registered user, 'grabbing' email addresses from the friends listed on that user's profile, and adding those email addresses to ConnectU's database." *Faceboook, Inc.*, 2007 WL 2326090, at *2.

Facebook also alleged that the defendants sent unsolicited emails to the stolen email addresses asking users to join ConnectU, a competing social networking site. *Id.* The ***Facebook*** court acknowledged the difficulty with "apply[ing] traditional geographically-based precepts of jurisdiction in a world where such borderlines are decreasingly important in many other contexts." *Id.* at \*6. The court ultimately determined that "the technology of the Internet can . . . provide a means whereby specific, targeted conduct may be 'expressly aimed' at a particular individual or entity, despite the fact that the person engaging in the conduct may not know the *geographic* location of the individual or entity." *Id.* at \*5 (emphasis in original). The ***Facebook*** court applied the ***Calder*** effects test and held that the defendants expressly aimed their conduct at Facebook when it hacked into the website. *Id.* at \*5-6. The court opined that the defendants could be haled into California court, despite not knowing Facebook's physical address, because the defendants expressly aimed their conduct at Facebook's website. *Id.* at \*7.

Here, EnhanceWorks encouraged Dropbox to access its website and review its information and marketing materials when it included a link to Expo's website with the materials sent to Mr. Mylod and Dropbox. Unlike the defendants in ***Premedics*** and ***Facebook***, there is no allegation in the complaint that Dropbox "hacked" into Expo's website and stole proprietary information; the entire allegation concerning the website was that "Dropbox appear[ed] to have used the Expo website" to create Dropbox Showcase's website. Dropbox's actions did not rise to the level of directing activities or conduct into Expo's website and, therefore, Tennessee. Taking EnhanceWorks's allegations as true and giving all reasonable inference in its favor, Dropbox, at most, copied marketing materials from the public website and used those materials outside Tennessee to create and promote Dropbox Showcase. There are no allegations that Dropbox purposefully directed its activities towards Tennessee with the intent to cause harm here. ***Predemics, Inc.***, 2007 WL 3012968, at \*4 (citing ***Koch***, 54 Fed. Appx. at 810). Finally, there are no allegations in the complaint that Expo's website indicated that EnhanceWorks was a Tennessee company, or that Dropbox otherwise knew that the website was connected to Tennessee.

We reach our conclusion finding no personal jurisdiction whether we apply the tests in ***ALS Scan, Inc.*** and ***Shrader*** or the analyses in ***Premedics*** and ***Facebook***. Indeed, our conclusion is in line with a previous decision from this Court relating to personal jurisdiction and the Internet. In ***Hibdon v. Grabowski***, 195 S.W.3d 48, 71 (Tenn. Ct. App. 2005), we concluded that a trial court properly exercised personal jurisdiction over the defendants when they "directed many of their Internet messages to residents of Tennessee." *Id.* We also noted that personal jurisdiction was proper because the alleged causes of action "arose specifically from injuries arising out of or relating to those Internet messages." *Id.* Here, EnhanceWorks did not allege sufficient facts to demonstrate that Dropbox deliberately directed any electronic activity to Expo's website or to the State of Tennessee. To the contrary, the allegation is that Dropbox copied information from the public website and used it in another state.

From our review, we conclude that EnhanceWorks failed to meet its burden to show that Dropbox purposefully created significant contacts with Tennessee. *See Gordon*, 300 S.W.3d at 647. Therefore, we agree with the trial court's finding that EnhanceWorks did not establish Dropbox's minimum contacts. Because EnhanceWorks failed to establish Dropbox's minimum contacts with Tennessee, we do not reach the second step of the *NV Sumatra* test and, as such, do not consider whether exercising jurisdiction over Dropbox would be unreasonable or unfair. *See NV Sumatra*, 403 S.W.3d at 760.

Our conclusion does not deprive EnhanceWorks from pursuing relief in the proper forum; it merely ensures that due process is met, and that the case will be tried in a state that is "'fair and substantially just to both parties . . . .'" *Gordon*, 300 S.W.3d at 646 (quoting *Masada Inv. Corp.*, 697 S.W.2d at 335).

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order granting Dropbox's motion to dismiss for lack of personal jurisdiction. The case is remanded for such further proceedings as are necessary and consistent with this opinion. Costs of the appeal are assessed against Appellant, EnhanceWorks, Inc., and its surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE